William SANJOUR, et al., Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,
Defendants.

Civ. A. No. 91–2750 SSH.

United States District Court,
District of Columbia.

Feb. 19, 1992.

**1034**

Stephen M. Kohn, David K. Colapinto, Washington, D.C., for plaintiffs.

Mary E. Goetten, Jeffrey S. Gutman, Dept. of Justice, Civ. Div., Federal Programs Branch, Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are defendants' motion to dismiss, plaintiffs' motion for summary judgment, and the oppositions and replies thereto.[1] Because the Court considers evidence besides the pleadings, the Court treats the defendants' motion as a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). For the reasons stated below, the Court denies the plaintiffs' motion for summary judgment and grants the defendants' motion for summary judgment.

### Background

Plaintiff William Sanjour filed his original complaint on October 28, 1991, seeking injunctive and declaratory relief against the Environmental Protection Agency (EPA) and several of its officials.[2] Plaintiff sought a temporary restraining order and/or a preliminary injunction to enjoin defendants from enforcing "all restrictions placed on his reimbursement for reasonable travel expenses as prohibited on page 3 of EPA Ethics Advisory 91–1." (Plaintiff's Complaint, at 9.) He also sought a declaration that certain "regulations, policies, memoranda and directives" relating to reimbursement of travel expenses are void as

[1.] Upon denying the original plaintiff's request for a preliminary injunction, the Court noted it would treat plaintiff's motion as a cross-motion for summary judgment. *See* Order (Jan. 22, 1992).

[2.] The officials named in the original complaint were William Reilly, EPA Administrator, Don R. Clay, Assistant Administrator for Solid Waste and Energy (*sic,* Emergency) Response, Silvia Lowrance, Director, Office of Solid Waste, and David Bussard, Director, Characterization and Assessment Division.

not supported by existing law and regulation, including the Ethics Reform Act of 1989, and violate the First Amendment. (Plaintiff's Complaint, at 9.) Following a hearing on October 30, 1991, and by Order dated October 31, 1991, the Court denied plaintiff Sanjour's motion for a temporary restraining order. *See* Order (Oct. 31, 1991).

Following the denial of the temporary restraining order, defendants filed a motion to dismiss. Plaintiff then filed a motion to amend his complaint to add both new plaintiffs and new defendants, which was granted. *See* Order (Jan. 21, 1991). However, the Court also granted the defendants' motion to dismiss certain individual defendants named in the amended complaint. *See id.* The Court then denied plaintiffs' subsequent motion for a preliminary injunction, noting it would treat the motion as one for a permanent injunction. *See* Order (Jan. 22, 1992). Therefore, now before the Court are defendants' motion for summary judgment and plaintiffs' motion for summary judgment based on the amended complaint.[3]

### Facts

The Court takes the following facts from plaintiffs' amended complaint. Plaintiffs William Sanjour and Hugh B. Kaufman are employees of the EPA and have been since 1972. Plaintiff North Carolina Waste Awareness and Reduction Network (NC WARN) is a non-profit environmental coalition of over 50 North Carolina environmental and community organizations. Defendants are EPA, EPA Administrator William Reilly, the Office of Government Ethics (OGE), and Stephen D. Potts, the Director of the OGE.

Both Sanjour and Kaufman describe themselves as "well-known 'whistleblower[s]'" at the EPA. (Amended Complaint, at 5, 6.) Sanjour and Kaufman regularly travel "throughout the United States in a non-official capacity, and meet[ ] with local environmental organizations and/or municipal authorities to discuss matters within the EPA's scope of responsibility and matters related with EPA policies and programs." (Amended Complaint, at 5, 6.) These speeches are often critical of EPA policies. Organizations which invite Sanjour and Kaufman to speak regularly reimburse them for their actual travel expenses.

In or about October of 1991, the EPA "instructed Mr. Kaufman not to accept travel reimbursement in the future for speeches in which EPA related matters were the focus of the speech." (Amended Complaint, at 6.) EPA officials also gave Sanjour an April 8, 1991, Memorandum (April 8th Memorandum) which stated that EPA policy prohibited employees from accepting non-official travel expenses for speeches or public appearances relating to EPA responsibilities, policies, and programs. Sanjour and Kaufman allege that without reimbursement, they are unable to engage in non-official speeches outside the Washington, D.C., area.

Sanjour and Kaufman further allege that they have been forced to cancel several invitations to speak as a result of the prohibition on the acceptance of travel expenses. Plaintiff NC WARN invited both Kaufman and Sanjour to speak at a public meeting in Jackson, N.C., on January 23, 1992. Both declined, citing the inability to accept travel expenses as preventing them from accepting. (Amended Complaint, at 10.)

Plaintiffs contend that the restriction on the acceptance of travel expenses violates the First Amendment, the Ethics Reform Act (ERA), is selectively enforced, and was promulgated in violation of the Administrative Procedure Act (APA). They seek an injunction against the OGE's interim regulation set forth at 56 Fed.Reg. 1724 (to be codified at 5 C.F.R. § 2636.202(b)), page three of the EPA Ethics Advisory 91-1,

---

**3.** Although defendants' motion to dismiss was filed prior to the amendment to the complaint, defendants note in their reply pleading that the Court should treat their motion to dismiss as addressing the amended complaint. *See* Defendants' Memorandum in Opposition to Plaintiff's Motion for a Preliminary Injunction and in Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss, at 3 n. 4.

and paragraph three of the April 8th Memorandum.

*Discussion*

The Challenged Regulations

The challenged OGE interim regulation is one part of an interim rule promulgated by the OGE after the passage of the ERA. Section 2636.202, with the sub-heading "Relationship to other laws and regulations," states that the honorarium and other prohibitions of the ERA are "in addition to any restriction on appearances, speaking or writing ... to which an employee is subject under applicable standards of conduct." Limitations on Outside Employment and Prohibition of Honoraria; Confidential Reporting of Payment to Charities in Lieu of Honoraria, 56 Fed.Reg. 1721, 1724 (1991) (to be codified at 5 C.F.R. § 2636.202(b)). The regulation further states:

> [A]n employee should accept compensation, including travel expenses ... only after determining that it is not prohibited by the following: ... (b) An employee is prohibited by the standards of conduct from receiving compensation, including travel expenses, for speaking or writing on subject matter that focuses specifically on his official duties or on the responsibilities, policies and programs of his employing agency. *Id.* at 1724-25.

The OGE interim rule, encompassing the above regulation, was circulated to deputy ethics officials within the EPA as an attachment to EPA Ethics Advisory 91-1 (Ethics Advisory), also at issue here. *See* EPA Ethics Advisory 91-1, Defendants' Motion To Dismiss, Ex. 3. The Ethics Advisory merely "highlight[s] some key points of the new OGE rule." *Id.* at 1. The challenged portion of the Ethics Advisory notes that "[e]mployees may not accept *non-official* travel expenses when the subject of an appearance or speech focuses specifically on the employee's official duties or on EPA's responsibilities, policies and programs." *Id.* at 3.[4]

The final document in question is the April 8th Memorandum circulated to EPA officials as a cover memorandum to the Ethics Advisory. The challenged paragraph of the memorandum asks the officials to note the above-quoted language of the Ethics Advisory relating to the ban on the acceptance of travel expenses. *See* April 8th Memorandum, at Defendants' Motion To Dismiss, Ex. 4.

First Amendment Claim

Plaintiffs claim that the rationale of the Supreme Court decision invalidating the "Son of Sam" law requires this Court to conclude that the ethics regulations unconstitutionally abridge their rights under the First Amendment. *See Simon & Schuster, Inc. v. New York State Crime Victims Bd.,* —— U.S. ——, 112 S.Ct. 501, 116 L.Ed.2d 476 (1991). Plaintiffs reason that the ethics regulation, like the Son of Sam law, creates a content-based financial burden on speech which must be justified by "a compelling state interest and [be] narrowly drawn to achieve that end." *See id.* at ——, 112 S.Ct. at 509 (citing *Arkansas Writers' Project, Inc. v. Ragland,* 481 U.S. 221, 231, 107 S.Ct. 1722, 1729, 95 L.Ed.2d 209 (1987)). While this Court believes that the challenged regulations would survive the *Simon & Schuster* test, the applicable test here is the one originally enunciated in *Pickering v. Board of Educ.,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

In *Pickering* the Supreme Court established a balancing test between the interests of the public employee in speaking on issues of public concern and the interests of the government as employer in regulating its employees. *See Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734-35. The Court noted that the interests the government has in regulating its employees "differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Id.*

---

**4.** In a footnote, the Ethics Advisory noted that a previous advisory, EPA Ethics Advisory 89-23 of February 9, 1990, had misinterpreted OGE policy in suggesting that such travel expenses might be permissible. *See* Defendants' Motion To Dismiss, Ex. 3, at 3 n. 4. Therefore, the Ethics Advisory stated that the previous advisory would be reissued with a modification. *See id.*

The first prong of the *Pickering* analysis requires the Court to consider whether the regulated speech involves matters of public concern. *See Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 1689–90, 75 L.Ed.2d 708 (1983). Plaintiffs Sanjour and Kaufman seek to speak to groups, such as plaintiff NC WARN, regarding policies and practices of the EPA. Both are self-described critics of the EPA and lecture in many states. Plaintiff NC WARN asserts that it desires Sanjour and Kaufman to speak because "of their well known status of 'EPA whistleblowers,' i.e. people willing to speak the truth about EPA policies and how they will effect (*sic*) the citizens of Northampton County, should the state approve the [hazardous waste] incinerator in the county." (First Affidavit of Billie L. Elmore, Executive Director of NC WARN, at ¶ 6, at 2.) Given the affidavits of plaintiffs, the Court has little trouble concluding that the regulated speech touches on matters of public concern. *See, e.g., Rankin v. McPherson,* 483 U.S. 378, 387–88, 107 S.Ct. 2891, 2898–99, 97 L.Ed.2d 315, *reh'g denied,* 483 U.S. 1056, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987) (finding remark involving the attempted assassination of Ronald Reagan involved a matter of public concern); *Connick,* 461 U.S. at 149, 103 S.Ct. at 1691 (finding issue of whether district attorneys feel pressured to work on political campaigns a matter of public concern); *Pickering,* 391 U.S. at 571, 88 S.Ct. at 1736 (finding that whether school system needs additional funds is a matter of public concern).

Although the affected speech here involves a subject of interest to the public, the regulation is constitutional if the defendants can meet the second prong of the *Pickering* analysis. The government may regulate speech on matters of public concern "where government regulations are aimed to address legitimate concerns and not designed to control or limit the exercise of first amendment freedoms." *Williams v. Internal Revenue Serv.,* 919 F.2d 745, 746 (D.C.Cir.1990) (*per curiam*) (citation omitted); *see Rankin v. McPherson,* 483 U.S. 378, 388, 107 S.Ct. 2891, 2899, 97 L.Ed.2d 315 (1987) (citing *Pickering* and *Connick*).[5] Here, the Court finds that both the OGE and the EPA have a legitimate interest in ensuring against the appearance of impropriety in the actions of their employees.[6] The government's ability to provide services is affected by the public's confidence in the integrity of public servants. The acceptance of money, even in the form of reimbursement for actual travel expenses, in return for discussing matters relating to EPA's policies, programs, and responsibilities creates the appearance of impropriety, if not amounting to actual impropriety.

In addition, the prohibition on travel expenses is not designed to inhibit the exercise of employees' First Amendment rights. The defendants have not prohibited Sanjour and Kaufman from making non-official public appearances, nor from giving speeches regarding the EPA's policies. Although the restriction is content-based in the sense that it affects only those who speak on matters directly related to the EPA's responsibilities, it is content-neutral in that the regulation is "not aimed at the *content*" of the speech "but rather at the *secondary effects*" of having a government employee receiving money to travel for such speeches. *Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47, 106 S.Ct. 925, 928–29, 89 L.Ed.2d 29 (1986). It is applied to any employee who intends to discuss the policies and programs of the EPA in his or her non-official capacity, regardless of whether the speech praises, criticizes, or merely explains EPA policies. Although in

---

**5.** Plaintiffs rely on *McGehee v. Casey,* which states that the appropriate test in First Amendment cases involving the government as employer is that the restriction is "narrowly tailored" and protects a "substantial government interest unrelated to the suppression of free speech." *McGehee v. Casey,* 718 F.2d 1137, 1142 (D.C.Cir. 1983). Although the Court relies on the test used in the more recent case of *Williams v.*

*Internal Revenue Serv.,* the Court finds that the *McGehee* test is met as well.

**6.** The Court believes that the government has a compelling interest in protecting against the appearance of impropriety. Therefore, if the Court were applying the *Simon & Schuster* test, it would also uphold the regulation.

practice it may affect more frequently employees speaking critically of the agency because other types of speeches may be made in an official capacity, this is an indirect effect unrelated to the purpose of the regulation. The restriction, by prohibiting a financial windfall to individuals who desire to make such speeches, does not impermissibly infringe upon First Amendment freedoms.[7] Because plaintiffs Sanjour and Kaufman are not prohibited from speaking to community groups, the First Amendment rights of NC WARN to hear their message is not impermissibly burdened.

The Court thus finds that the challenged regulation withstands constitutional attack. The content-neutral restriction does not violate the plaintiffs' First Amendment rights. Although it regulates matters which affect speech on issues of public concern, it is narrowly tailored to meet a legitimate government objective and is not designed to limit First Amendment freedoms.

Statutory Challenges

Even though the regulations pass constitutional muster, to be upheld they also must survive the statutory challenge. Plaintiffs make two statutory arguments: (1) the regulations violate the ERA, and (2) the OGE and the EPA improperly promulgated the regulations under the APA.

Ethics Reform Act

■ Plaintiffs claim that the restriction on the acceptance of travel expenses is inherently in conflict with the ERA, which plaintiffs read as expressly permitting the acceptance of such expenses.[8] The ERA, and the OGE regulations pertaining to it, do exclude "actual and necessary travel expenses" from the definition of honorarium. 56 Fed.Reg. at 1725 (to be codified at 5 C.F.R. § 2636.203(a)(4)). The ERA and the OGE make clear that receipt of an honorarium by Sanjour and Kaufman for their speeches is prohibited. This is undisputed. The fact that the ERA's definition of honorarium specifically excludes travel expenses does not imply that the reimbursement of travel expenses is always permitted. The circumstances to which the prohibition on the receipt of honorarium applies are much broader than the situation presented here. By excluding travel expenses from the definition of honorarium, the ERA's language merely supports the proposition that Congress did not want to ban travel expenses in every situation in which it wanted to ban other forms of compensation.[9] Therefore, the Court finds neither the OGE regulation nor the EPA Advisory nor the April 8th Memorandum violates the ERA.

Administrative Procedure Act Claims

Under the APA, an agency must follow certain notice and comment procedures prior to implementing a rule. These requirements include providing notice of a proposed rule at least 30 days prior to its taking effect and citing to the legal authority under which the rule is promulgated. *See* 5 U.S.C.A. § 553(b)(2), 553(d). Plaintiffs claim that the OGE regulation here did not meet these two requirements. De-

---

**7.** In addition to allowing them to speak at their own expense, the regulation only marginally hampers less expensive forms of communication, such as video, telephone, or publication.

**8.** The original plaintiff made this argument in his motion for a temporary restraining order and current plaintiffs renew it in their reply to defendants' opposition to their motion for a preliminary injunction. For purposes of the summary judgment motions, the Court treats the issue as properly raised.

**9.** *National Treasury Employees Union v. United States,* relied on by plaintiffs, does not refute this conclusion. *See National Treasury Employees Union v. United States,* 927 F.2d 1253 (D.C.Cir.1991). Before the court in that case was a preliminary injunction involving the ban on honorarium. There the court stated that the ban on honorarium did not include the acceptance of travel expenses, citing § 2636.203(a)(4). *See id.* at 1255. Although the facts of that case are not clear from the text of the opinion, the court addressed the matter in the general terms of "speaking or writing." *Id.* at 1254. As noted above, travel expenses are permitted for some such activities. Since the section in question here is on the page in the Federal Register preceding the one addressed in the *NTEU* case and is in the same OGE rule, this Court must assume that the court there was not addressing situations which fall under § 2636.202, which ban the acceptance of such expenses. *See* 56 Fed.Reg. at 1724 (to be codified at 5 C.F.R. § 2636.202).

fendants assert that the legal authority was sufficiently stated and that the rule was properly promulgated under an exception to the 30–day notice requirement. The Court concludes that the OGE followed the necessary rulemaking procedures and therefore upholds the regulations.

### A. Lack of Legal Authority Claim

■ The APA requires that notice of a proposed rule include "reference to the legal authority under which the rule is proposed." 5 U.S.C.A. § 553(b)(2). The interim rule states the following:

> Authority: 5 U.S.C.A. appendix 102(a)(1)(A), appendix IV and appendix 501–505; E.O. 12674, 54 FR 15159, 3 C.F.R. 1969 Comp., p. 215, as modified by E.O. 12731, 55 FR 42547. 56 Fed.Reg. at 1723.[10]

In addition, under the heading "Purpose" the interim rule states that it is issued under authority of titles II and VI of the ERA and notes the particular provisions of the Act which it implements. *See* 56 Fed. Reg. at 1723. The supplementary information provided at the beginning of the interim rule also cites the authority under which it is promulgated. *See* 56 Fed.Reg. at 1721.

Therefore, the Court finds that the agency made reference to the legal authority. The question then is whether the stated authorities support the issuance of the challenged regulation. The Court finds that they do. Executive Order 12674 sets out general principles of ethical conduct and gives the OGE the responsibility for "[p]romulgating ... regulations that establish a single, comprehensive, and clear set of executive-branch standards of conduct." Exec. Order No. 12674, 3 C.F.R. 215, 216 (1989 Comp.). One of the principles enunciated by that Executive Order is that "[e]m-

ployees shall not use public office for private gain." *Id.* at 215. Although none of the points in the Executive Order explicitly mentions travel expenses, the broad principles outlined, and the grant of authority given the OGE, encompass the content of § 2636.202(b) challenged here.

### B. Lack of Notice Claim

■ Plaintiffs' second APA claim involves the APA's requirement that "publication or service of a substantive rule shall be made not less than 30 days before its effective date." 5 U.S.C.A. § 553(d). Here, the challenged section of the rule took effect January 1, 1991, despite its not being published until January 17, 1991. *See* 56 Fed.Reg. at 1721. Clearly, the 30–day notice requirement was not met. Nevertheless, the APA excepts certain rules and situations from the 30–day requirement. These include

> interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice; or ... when the agency for good cause finds ... that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest. [5 U.S.C.A. § 553(b)(3)(A), (B).]

In addition, the rulemaking requirements do not apply to matters "relating to agency management or personnel." 5 U.S.C.A. § 553(a)(2). Defendants claim that at least one of these exemptions applies here. However, these exceptions are to be " '... narrowly construed and only reluctantly countenanced.' " *See American Fed'n of Gov't Employees v. Block,* 655 F.2d 1153, 1156 (D.C.Cir.1981) (quoting *Department of Envtl. Protection v. EPA,* 626 F.2d 1038, 1045 (D.C.Cir.1980)). Nevertheless, the Court finds that the good cause exception applies.[11]

---

**10.** Defendants note that there is a typographical error in the above quote from the *Federal Register.* It should read appendix VI, not appendix IV. *See* Defendants' Notice of Filing, at 1. As this appendix is entitled "Financial Disclosure Requirements of Federal Personnel," it is not material to this Court's decision and therefore the error is harmless in this case.

**11.** The Court believes that neither of the other suggested exceptions applies. While the majority of the interim rule is indeed interpretive of the ERA, the challenged section is not interpretive of any particular statutory provision but rather supplements the statute and reconciles it with other, nonstatutory obligations. *See United Technologies Corp. v. EPA,* 821 F.2d 714, 719–20 (D.C.Cir.1987). Second, although this regula-

At the time the OGE promulgated the interim rule, it relied on the good cause exception to waive the 30–day requirement for the majority of the interim rule, including the challenged section. The OGE supported this decision because of the penalties to which employees potentially were subject should they violate provisions of the ERA, which took effect on January 1, 1991. *See* 56 Fed.Reg. at 1722.[12] Although the challenged section of the interim rule does not involve provisions of the ERA but rather its relationship to other ethical regulations and standards, the Court finds that this provision also meets the "good cause" exception. If the interim rule had been promulgated without § 2636.202, the rule would have given the impression that acceptance of travel expenses is permitted in all circumstances. To dispel this conclusion, the OGE incorporated provisions, including the one at issue here, relating to other ethical obligations as a part of the interim rule.

The Court finds that the prohibition on the acceptance of compensation was longstanding OGE policy. *See* OGE Memorandum 85 × 18 (Oct. 28, 1985), at Defendant's Motion To Dismiss, Ex. 2. OGE Memorandum 85 × 18 (Memorandum) creates standards to enforce Executive Order 11122 which, like its successor Executive Order 12674, forbids "[u]sing public office for private gain." *See* 30 Fed.Reg. 6469 (1965). The Memorandum states that "employees are prohibited from receiving com-

pensation for lectures or articles when the activity focuses specifically on the employing agency's responsibilities, policies, and programs." OGE Memorandum 85 × 18, at 2.[13] Although not specifically defined in the Memorandum, the word "compensation" is general enough to include travel expenses. EPA acknowledges that prior to the interim rule it had interpreted "compensation" to exclude reimbursement for travel expenses. This misinterpretation, however, supports the need for OGE to clarify its policy in the interim rule. Therefore, in order not to mislead employees and to make the ethical obligations clear to federal employees and their supervisors, OGE had good cause to exempt § 2636.202(b) from the 30–day notice and comment requirement.[14]

Having found that the OGE properly promulgated § 2636.202(b), the Court also upholds both the EPA's Ethics Advisory and the April 8th Memorandum. Both of these documents merely summarized the contents of the OGE interim rule.

Conclusion

Therefore, for the reasons stated above, this Court upholds the prohibition on the reimbursement of actual and necessary travel expenses to executive branch employees for speaking or writing on subjects directly relating to the policies, programs, or responsibilities of their agencies. Accordingly, the Court grants the defendants' motion for summary judgment and dismiss-

---

tion does deal with agency personnel, it goes beyond the scope of that exception. This is not a case involving solely the "'attraction, selection, motivation, leadership, understanding, and utilization of people as individual employees.'" *Stewart v. Smith*, 673 F.2d 485, 496–97 n. 38. (D.C.Cir.1982). In addition, it is not a case which merely affects the employees, but one which may impact on their potential audience, such as plaintiff NC WARN. *See Joseph v. Civil Serv. Comm'n*, 554 F.2d 1140, 1153 n. 23 (D.C.Cir.1977). Therefore, the Court finds that the personnel exception does not apply.

**12.** The ERA subjects employees to possible fines of $10,000 or the amount of prohibited compensation received, whichever is greater. *See* 54 Fed.Reg. at 1722.

**13.** The Court rejects plaintiffs' argument that OGE Memorandum 84 × 5, by dealing with other ethical restrictions on the reimbursement of

travel expenses but not the one at issue here, implies that no other restrictions on acceptance of travel expenses exist. *See* OGE Memorandum 84 × 5 (May 1, 1984, amended May 24, 1984), at Plaintiffs' Motion For A Preliminary Injunction, Attachment 1.

**14.** As stated above, the OGE had the authority under Executive Order 12674 to promulgate a rule prohibiting the acceptance of travel expenses for speeches involving the policies, programs and responsibilities of the EPA. Indeed, the OGE has promulgated a comprehensive proposed ethics rule which includes a ban on the acceptance of reimbursement of travel expenses in situations including the ones here. *See* 56 Fed.Reg. 33812 (July 23, 1991) (to be codified at 5 C.F.R. § 2635.807).

es Counts I, II, III, IV, V, and VII, and denies plaintiffs' request for a permanent injunction.[15]

---

**15.** The Court may not summarily dispose of Count VI, which alleges selective enforcement of the challenged regulations and raises disputed questions of material fact.