William SANJOUR, Hugh B. Kaufman, and North Carolina Waste Awareness and Reduction Network, Plaintiffs,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, William Reilly, the United States of America, Office of Government Ethics, and Stephen D. Potts, Defendants.

No. CIV. A. 91–2750 SSH.

United States District Court, District of Columbia.

April 10, 1998.

15

Stephen M. Kohn, David K. Colapinto, Washington, DC, for Plaintiffs.

Kevin M. Simpson, DOJ, Civil Div., Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court pursuant to the Court of Appeals' decision in *Sanjour v. Environmental Protection Agency*, 56 F.3d 85 (D.C.Cir.1995) (*"Sanjour"*). Currently pending are plaintiffs' motion for a final order, defendants' opposition thereto and motion for a final order, plaintiffs' reply, defendants' reply, and plaintiffs' surreply. Also pending are plaintiffs' motion for leave to file an application for attorney's fees and costs, defendants' opposition thereto, and plaintiffs' reply. Upon consideration of the entire record, the Court shall enter a separate Judgment in accordance with the reasoning set forth below.

## BACKGROUND

The history of this litigation is discussed at length in this Court's prior Opinion and in the Court of Appeals' *en banc* opinion. *See Sanjour v. EPA*, 786 F.Supp. 1033 (D.D.C. 1992), *aff'd* 984 F.2d 434 (D.C.Cir.1993), *decision vacated and reh'g granted*, 997 F.2d 1584, *rev'd and remanded*, 56 F.3d 85 (D.C.Cir.1995) (*en banc*). In brief, this matter arises from a First Amendment challenge by William Sanjour and Hugh Kaufman—two employees of the Environmental Protection Agency ("EPA")—and the North Carolina Waste Awareness and Reduction Network ("NC WARN") to regulations prohibiting EPA employees from receiving travel expense reimbursement from private sources for unofficial speaking or writing engagements concerning the subject matter of the employees' work, while permitting such compensation for officially authorized speech on the same issues.

This Court granted summary judgment to defendants on all counts except a single claim of selective prosecution, and was affirmed by a panel of the Court of Appeals. A subsequent *en banc* decision, however, invalidated the "no-expenses" prohibition on First Amendment grounds and remanded the case "for proceedings consistent with this opinion." *Sanjour*, 56 F.3d at 88, 99.

## DISCUSSION

### I. Motions for Issuance of a Final Order

Plaintiffs move this Court to declare that the

regulations, policies, memoranda and directives of defendants which prohibit plaintiffs from paying or receiving reasonable travel reimbursements for non-official speech which concerns the responsibilities, programs and policies of the EPA, OGC [sic] and United States government are invalid ... and ... unconstitutional under the First Amendment, as they relate to plaintiffs, federal government employees who work below the grade level of senior executive service, and outside organizations similarly situated to plaintiff [NC WARN].

Pls.' Proposed Order at 1–2. Plaintiffs further ask this Court to enjoin defendants from enforcing "against plaintiffs, and against all federal employees below the senior executive service level of employment, ... all restrictions placed on their reimbursement for reasonable travel expenses as prohibited on page 3 of EPA Ethics Advisory 91–1, under 5 C.F.R. § 2635.807(a), 5 C.F.R. § 2636.202(b) and under 41 C.F.R. § 304–1.3." *Id.* at 1.

The government challenges plaintiffs' requested relief on three grounds. First, the government contends that plaintiffs' proposed order is overbroad because it provides for a government-wide injunction. Defendants argue that because plaintiffs did not litigate this case as a class action, any relief entered by this Court should be restricted to the plaintiffs.

The *Sanjour* decision explicitly contemplates an injunction granting government-wide relief. The Court of Appeals explained that the test for "determining the constitutionality of a statute or regulation restricting government employee speech requires the reviewing court to consider ... the 'interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression.'" *Sanjour*, 56 F.3d at 92 (quoting *United States v. National Treasury Employees Union*, 513 U.S. 454, 468, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995)). The Court of Appeals

went on to note that this test "requires the court to go beyond the facts of the particular case before it." *Id.* 56 F.3d at 92. The only limitation on the court's decision was its statement that, though it was looking beyond the particular facts of the plaintiffs' case:

> [W]e cannot go so far as to include every possible application of the challenged scheme . . . . [T]he balancing of interests relevant to senior executive officials might "present[ ] a different constitutional question than the one we decide today." We therefore express no view on whether the challenged regulations may be applied to senior executive employees.

*Id.* 56 F.3d at 93 (internal citations omitted).

This Court thus concludes that government-wide relief for plaintiffs and all similarly situated government employees is appropriate. Such a ruling is well-supported by precedent, as courts frequently enjoin the enforcement of regulations ultimately held to be invalid. *See, e.g., Harmon v. Thornburgh,* 878 F.2d 484, ·495 n .21 (D.C.Cir.1989) ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990); *Planned Parenthood Fed'n of Amer., Inc. v. Department of Health and Human Resources,* 712 F.2d 650 (D.C.Cir.1983) (affirming final injunction prohibiting enforcement of invalidated regulations); *Dimension Fin. Corp. v. Board of Governors of the Fed. Reserve Sys.,* 744 F.2d 1402 (10th Cir.1984) (enjoining Board from enforcing or implementing invalidated regulations), *aff'd,* 474 U.S. 361, 106 S.Ct. 681, 88 L.Ed.2d 691 (1986); *Service Employees Int'l Union v. General Servs. Admin.,* 830 F.Supp. 5 (D.D.C.1993) (invalidating GSA regulation

and enjoining further enforcement of the rule).

■ Moreover, courts may issue injunctions that benefit non-parties where they are necessary to give the prevailing parties the relief to which they are entitled. *See Brown v. Trustees of Boston Univ.,* 891 F.2d 337 (1st Cir.1989), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); *Bresgal v. Brock,* 843 F.2d 1163, 1170–71 (9th Cir. 1987); *Professional Ass'n of College Educators v. El Paso County Community College Dist.,* 730 F.2d 258, 274 (5th Cir.), *cert. denied,* 469 U.S. 881, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984); *Evans v. Harnett County Bd. of Educ.,* 684 F.2d 304, 306 (4th Cir. 1982). Here, plaintiff NC WARN has an interest in inviting government employees (besides plaintiffs) to meetings and conferences. Anything other than a government-wide injunction would "[d]eprive NC WARN and the general populace of government employees' novel and valuable perspective." *Sanjour,* 56 F.3d at 94.

■ The government further contends that plaintiffs' proposed order improperly involves this Court in formulating standards of ethical conduct by usurping the Office of Government Ethics' ("OGE's") authority to promulgate regulatory amendments in response to the *Sanjour* decision. The Court disagrees. Plaintiffs' proposed government-wide injunction leaves the OGE free to promulgate new regulations which it believes are the most appropriate response to *Sanjour;* it does not involve the Court in such decisions. The OGE simply is prohibited from enforcing the current regulations against employees below the senior executive service level of employment.[1]

Finally, defendants argue that plaintiffs' proposed order is overbroad because it enjoins the enforcement of more regulations

---

1. Defendants argue that plaintiffs' proposed injunction usurps the OGE's authority by choosing the senior executive service level as a cut-off point. The *Sanjour* court, however, explicitly stated that it expressed "no view on whether the challenged regulations may be applied to senior executive employees." *Sanjour,* 56 F.3d at 93. It appears clear to this Court that the Court of Appeals was referring to employees in the senior executive service, due to the reference to *NTEU,*

in which the Supreme Court limited relief to "all Executive Branch employees below Grade GS–16." *NTEU,* 513 U.S. at 477–478, 115 S.Ct. 1003. Therefore, in order to narrowly tailor the remedy to the harm shown, the injunction is limited to all federal employees below the senior executive service level of employment. *See National Treasury Employees Union v. Yeutter,* 918 F.2d 968, 977 (D.C.Cir.1990).

than necessary to carry out the *Sanjour* court's mandate. Defendants argue that the Court should not enjoin the enforcement of the GSA regulation found at 41 C.F.R. § 304–1.3(a) [hereinafter "GSA Regulation"] or any provisions of 5 C.F.R. § 2635.807(a) other than subsection (a)(2)(i)(E)(2).[2]

The Court of Appeals clearly considered the constitutionality of the entire regulatory scheme in *Sanjour*, including §§ 2636.202(b), 2635.807(a), and the GSA Regulation. *Sanjour*, 56 F.3d at 90. The key to that court's decision appears to have been that the regulatory scheme—allowing reimbursements for official, sanctioned speeches but not for unofficial ones—posed a "real and substantial threat of . . . censorship risks" and "discrimination on the basis of the viewpoint expressed by the employee" without adequate justification. *Id.* 56 F.3d at 97 (citation omitted). It is the duty of this Court to craft an appropriate remedy eliminating this burden on plaintiffs' First Amendment rights, yet which is "no more burdensome to . . . defendants than necessary to provide complete relief." *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765, 114 S.Ct. 2516, 129 L.Ed.2d 593 (1994) (internal quotation omitted).

An injunction against the enforcement of 5 C.F.R. § 2635.807(a) in its entirety is necessary to provide plaintiffs with complete relief. The *Sanjour* court never broke § 2635.807(a) into subsections; it evaluated the statute as a whole. *Sanjour*, 56 F.3d at 90. Defendants argue that when the Court of Appeals observed that the "challenged regulations clearly prevent Sanjour . . . from addressing *current government policies,*" *id.* 56 F.3d at 91 (emphasis added), it intended to single out

and limit its analysis to § 2635.807(a)(2)(i)(E)(2), which prohibits compensation, other than from the government, for teaching, speaking, or writing concerning "[a]ny ongoing or announced *policy,* program, or operation of the agency." 5 C.F.R. § 2635.807(a)(2)(i)(E)(2) (emphasis added). The fact that the word "policy" appears in § 2635.807(a)(2)(i)(E)(2) and not in the remaining subsections does not mean that it is the only subsection which must be enjoined. For example, if § 2635(a)(2)(i)(C) is not enjoined, plaintiffs Sanjour and Kaufman may be prohibited from receiving reimbursement for travel expenses from coalitions such as NC WARN because NC WARN, an environmental coalition of over 50 North Carolina environmental and community organizations, may be characterized as an entity with "interests that may be affected substantially by performance or nonperformance of the employee's official duties." 5 C.F.R. § 2635(a)(2)(i)(C). This Court, therefore, will enjoin the enforcement of 5 C.F.R. § 2635(a) in its entirety.[3]

The Court does, however, agree with defendants that the GSA Regulation need not be enjoined in order to fully vindicate plaintiffs' interests.[4] Though plaintiffs rightly point out that the *Sanjour* court held the entire regulatory scheme (§§ 2636.202(b), 2635.807(a), the GSA Regulation, and EPA Ethics Advisory 91–1) invalid, that holding does not mean the entire regulatory scheme must be enjoined. *See Sanjour*, 56 F.3d at 90. The scheme is problematic because it inhibits free speech and promotes viewpoint discrimination by allowing travel reimbursements for "official" but

---

2. Defendants also argue that § 2636.202(b) need not be enjoined because it was superseded by 5 C.F.R. § 2635.807(a). The D.C. Circuit, however, indicated that § 2636.202(b) remains in effect, thus the Court will enjoin its enforcement. *See Sanjour*, 56 F.3d at 90.

3. Defendants point out that some speech which falls under § 2635.807(a) may not involve speech of "public concern" and, therefore, the regulation as applied to that speech may be constitutionally permissible. However "[w]hen a court finds that an agency regulation is invalid in substantial part, and that the invalid portion cannot be severed from the rest of the rule, its typical

response is to vacate the rule." *Harmon*, 878 F.2d at 494 (footnote omitted).

4. The GSA Regulation provides, in relevant part:

Acceptance of payment for employee. As provided in this part, an agency may accept payment from a non-Federal source (or authorize an employee to receive such payment on its behalf) with respect to attendance of the employee at a meeting or similar function which the employee has been authorized to attend in an official capacity on behalf of the employing agency.

41 C.F.R. § 304–1.3(a).

not "unofficial" speeches. *Id.* 56 F.3d at 96–97. An injunction covering only §§ 2636.202(b) and 2635.807(a) eliminates these concerns. As pointed out by defendants, the GSA Regulation, which authorizes the government to accept third-party reimbursements in connection with official employee travel under certain conditions,

> was only constitutionally objectionable to the *Sanjour* court in light of the regulatory prohibition on travel expense reimbursements in connection with certain unofficial travel .... [O]nce the prohibition on travel expense reimbursement for unofficial speech about the agency's programs and policies ... is lifted, then there can be no possible constitutional objection to allowing agencies to accept travel reimbursements from outside sources for official travel .... [A]gencies could accept travel expenses for an official speaker while unofficial speakers ... would be free to receive such reimbursements [personally].

Defs.' Reply at 11; *see also* 41 C.F.R. § 304–1.3(a). Therefore, because "injunctions issued by federal courts should be narrowly tailored to remedy the harm shown," this Court will not enjoin enforcement of the GSA Regulation. *Yeutter*, 918 F.2d at 977.

## II. Attorney's Fees and Costs under the Equal Access to Justice Act

Plaintiffs also ask this Court to find them eligible for reasonable legal expenses incurred in filing and pursuing this lawsuit before this Court and the Court of Appeals, pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d). Under that statute, a "prevailing party" against the United States in a civil action (other than cases sounding in tort) may be awarded fees and other expenses unless the court finds that the position of the United States was "substantially justified or that special circumstances make an award unjust." *Id.* at § 2412(d)(1)(A). When the government contests an application for fees under EAJA, "it must address two issues: first, whether the agency's underlying action that gave rise to the civil litigation is substantially justified; [and] second, whether its position in the civil litigation is substantially justified." *Jones v. Lujan*, 887 F.2d 1096, 1098 (D.C.Cir.1989).

The government has the burden of proof to show that its position was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); *Lundin v. Mecham*, 980 F.2d 1450, 1459 (D.C.Cir.1992).

"The threshold inquiry in determining whether the government's ... position was substantially justified is identification of that position." *Martin v. Lauer*, 740 F.2d 36, 44 (D.C.Cir.1984); *see also Citizens Council of Delaware County v. Brinegar*, 741 F.2d 584, 595 (3d Cir.1984). Plaintiffs claim that the government must justify the promulgation and general enforcement of the unconstitutional regulatory scheme as well as the alleged "selective enforcement" of those regulations against plaintiffs Sanjour and Kaufman. Defendants argue that plaintiffs were only "prevailing parties" on the First Amendment issue, and that therefore the government need only justify its position on that issue.

As a general rule, plaintiffs "prevail" by receiving some or all of their requested relief, in which case the government must prove that its overall position in the litigation, even with regard to arguments on which the ultimate relief was not based, were "substantially justified." *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In some cases, however, plaintiffs "present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories .... [and] in such cases ... counsel should be compensated only for work on those distinct claims that prevailed." *Martin*, 740 F.2d at 47 (citing *Hensley*, 461 U.S. at 434–35, 103 S.Ct. 1933); *Action on Smoking and Health v. Civil Aeronautics Bd.*, 724 F.2d 211, 215–216 (D.C.Cir.1984). This scenario occurs when the legal issues raised by one avenue of relief are largely distinct from those implicated by an alternative claim. *Martin*, 740 F.2d at 47 (plaintiffs prevailing on First Amendment theory not entitled to fees expended on alternative whistleblower theory rejected by the court).

Plaintiffs' claims fall squarely into that category of claims which must be treated separately according to *Martin.* The Court of Appeals noted in *Sanjour* that "selective enforcement" is an equal protection cause of action totally distinct from a challenge under the First Amendment. *Sanjour,* 56 F.3d at 91 n. 9. Plaintiffs' lawsuit, therefore, presented "distinctly different claims for relief ... based on different facts and legal theories," so the claims are properly treated "as if they had been raised in separate lawsuits." *Hensley,* 461 U.S. at 434–35, 103 S.Ct. 1933; *see also Martin,* 740 F.2d at 47–49. Plaintiffs clearly prevailed on the First Amendment issue. It is equally clear that plaintiffs did not prevail on their selective enforcement claim, since it remained pending in this Court during the appeal of the First Amendment issue.[5] *See Sanjour,* 56 F.3d at 104–105 (Sentelle, J., dissenting).

 Defendants are thus required to prove that their position on the First Amendment claim was substantially justified, *i.e.,* "justified to a degree that could satisfy a reasonable person." *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541; *see also* 28 U.S.C. § 2412(d)(1)(A). The government must substantially justify both the governmental action that gave rise to the litigation and the government's conduct during the litigation. 28 U.S.C. § 2412(d)(2)(D); *see also Lundin,* 980 F.2d at 1459.

In this case, the governmental action giving rise to the First Amendment violation was the promulgation and enforcement of 5 C.F.R. §§ 2635.807(a) & 2636.202(b), and 41 C.F.R. § 304-1.3. Though this regulatory scheme ultimately was held to be unconstitutional, there were logical reasons for the EPA's allowing third-party reimbursement for official travel only. The government established the regulations to protect "the integrity of the government occasioned by employees using their public office for private gain." *Sanjour,* 56 F.3d at 94. Because official travel is undertaken through and on

the behalf of the agency, it more easily can be policed by the EPA. It is reasonable, therefore, that the EPA would allow reimbursement for travel expenses for official (monitored) travel but not for unofficial (unmonitored) travel. *See id.* 56 F.3d at 102 (Sentelle, J., dissenting). Typically, governmental action is found not to be "substantially justified" in situations in which the government actively disregarded its own policies or well-established legal precedent, or there was no reasonable factual basis for the governmental action. *See, e.g., Cooper v. United States R.R. Retirement Bd.,* 24 F.3d 1414, 1417 (D.C.Cir.1994) (government's action had no reasonable factual basis); *Jones v. Hodel,* 685 F.Supp. 4, 8 (D.D.C.1988) (Secretary of the Interior's failure to comply with existing grievance procedures indefensible), *aff'd sub nom. Jones v. Lujan,* 883 F.2d 1031 (D.C.Cir.1989). Such is not the case here. The regulations at issue were promulgated before the Supreme Court's 1995 *NTEU* decision, when the governing law was unclear, and the government had sound policy reasons for the regulations. *See Sanjour,* 56 F.3d at 88–90 & n. 6, 94. This Court is satisfied that the decision to pass and enforce the regulations was sufficiently justified such that "a reasonable person could think [it] correct."[6] *Pierce,* 487 U.S. at 566 n. 2, 108 S.Ct. 2541.

Finally, in order to defeat plaintiffs' application for attorney's fees and costs under the EAJA, the government must establish that its litigation position had "a reasonable basis in law and fact." *Id.* Previous cases have held that a litigation position was not substantially justified when the government failed to address obvious legal issues or made inexcusable motions. *See, e.g., Lundin,* 980 F.2d at 1460 (government failed to mention "compelling statutory reasons" which undermined its entire argument); *Jones,* 685 F.Supp. at 8 (government's motion requesting a lengthy extension after court held

---

5. In their motion for attorney's fees, plaintiffs indicate that they have abandoned the selective prosecution claim; thus the Court dismisses that claim.

6. Plaintiffs proffer a great deal of evidence that the regulations were selectively enforced. This is not the issue on which plaintiffs ultimately prevailed, and therefore such evidence is not relevant to the "substantial justification" which the government must establish.

plaintiff would be irreparably harmed without swift injunctive relief was "indefensible").

It is clear that the government conducted this litigation in a manner well-grounded in law and fact. Though the government's arguments were not ultimately accepted by a majority of the Court of Appeals, the government squarely addressed each issue. *See Sanjour,* 56 F.3d at 93–98 (noting the government's responses to the court's concerns). The Court of Appeals simply did not agree with the government. *See id.* 56 F.3d at 96; *see also id.* 56 F.3d at 100 (Sentelle, J., dissenting) ("Certainly reasonable persons might differ on the proper phrasing of the issues, as on the result .... But the ability to differ from an agency does not imply the propriety of a court setting aside that agency's reasoned decisions.").

Nor did the Supreme Court's *NTEU* decision make the government's litigation position frivolous, as plaintiffs contend. Defendants argued this case before the Court of Appeals *en banc* on February 9, 1994. *Id.* 56 F.3d at 90 n. 6. The Supreme Court did not issue its decision in *NTEU* until February 22, 1995. *Id.*

Moreover, the government's position would not be unreasonable even had the *NTEU* opinion been issued before it presented its case to the Court of Appeals. The vast majority of speech at issue in *NTEU* did not involve the subject matter of government employment. *NTEU,* 513 U.S. at 470, 115 S.Ct. 1003. In *Sanjour,* the challenged regulations only restricted reimbursement for non-official speech related to the employee's job. *See* 5 C.F.R. § 2635.807(a) (restricting compensation for speech relating to "the employee's official duties"); 5 C.F.R. § 2636.202(b) (restricting reimbursement for speech focusing on "his official duties or on the responsibilities, policies and programs of his employing agency"). In fact, in *NTEU,*

"the Supreme Court implied that the regulation of remuneration for employee speech could be upheld provided there was a proper 'nexus between the speaker's official duties and either the subject matter of the speaker's expression or the identity of the payor.'" *Sanjour,* 56 F.3d at 101 (Sentelle, J., dissenting) (quoting *NTEU,* 513 U.S. at 479, 115 S.Ct. 1003). The existence of a "nexus" in *Sanjour,* where one was missing in *NTEU,* justified the government's decision to continue its defense of the regulations even in light of the *NTEU* opinion.[7]

## CONCLUSION

For the reasons set forth herein, plaintiffs' motion for issuance of a final order is granted to the extent it requests an injunction against the enforcement of restrictions placed on reimbursement for reasonable non-official travel expenses as prohibited on page 3 of EPA Ethics Advisory 91–1 and under 5 C.F.R. §§ 2635.807(a) & § 2636.202(b) and a judgment declaring the unconstitutionality of the entire scheme. Plaintiffs' motion is denied to the extent that it requests an injunction against 41 C.F.R. § 304–1.3. Defendants' motion for issuance of a final order is granted insofar as it requests no injunction of 41 C.F.R. § 304–1.3, and denied in its request to limit injunctive relief to plaintiffs only. In addition, plaintiffs' motion for leave to file an application for attorney's fees and costs under the Equal Access to Justice Act is denied. In accordance with Federal Rule of Civil Procedure 58, an appropriate Judgment accompanies this Opinion.

---

**7.** The fact that some judges or courts agree with the government's position does not establish definitively that it was substantially justified. *See Pierce,* 487 U.S. at 569, 108 S.Ct. 2541. It is, however, a valid consideration in determining whether the government's position was substantially justified. *See id.* 487 U.S. at 569, 108 S.Ct. 2541 ("[A] string of losses can be indicative [of whether a position is substantially justified]; and

even more so a string of successes."). It is significant in this case that the government's position initially was upheld by both this Court and a panel of the Court of Appeals. Even after the *NTEU* decision, the Court of Appeals, sitting *en banc,* was split 5–4, and the minority judges detailed their objections in a lengthy dissent. *See Sanjour,* 56 F.3d at 99–105 (Sentelle, J., dissenting).