Annie Lee HUDSON, K. Celeste Campbell, Estherlene Holmes, Edna Rose McCoy, Dr. Debra Ann Petitan, Walter A. Sherrill, and Beverly F. Underwood, Plaintiffs,

v.

CHICAGO TEACHERS UNION, LOCAL NO. 1, et al., Defendants.

No. 83 C 2619.

United States District Court, N.D. Illinois, E.D.

March 27, 1989.

Margaret S. Garvey, Freeborn & Peters, Chicago, Ill., Edwin Vieira, Jr., Independent Hill, Va., for plaintiffs.

Lawrence Poltrock, Witwer, Burlage, Poltrock & Giampietro, Chicago, Ill., Laurence Gold, David Silberman, AFL–CIO, Washington, D.C., Joseph M. Jacobs, Charles Orlove, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for Chicago Teachers Union.

P. Kevin Connelly, Michael J. Sheehan, Lederer, Reich, Sheldon & Connelly, Patricia Whitten, Chicago Bd. of Educ., Law Dept., Chicago, Ill., for Chicago Bd. of Educ.

## ORDER

BUA, District Judge.

 In the latest chapter in this episodic litigation,[1] plaintiffs move for the entry of final judgment based on the court's order of November 16, 1988. More than a little disingenuously, plaintiffs' attorneys claim that the November 16 order effectively resolved all of the issues raised by plaintiffs' amended complaint. By making this assertion, plaintiffs' lawyers betray their ignorance of their own clients' prayer for relief. Plaintiffs seek damages for *any* constitutional violations stemming from the collection of fair share fees by the Chicago Teachers Union ("CTU"). The court's November 16 order dealt exclusively with the constitutional sufficiency of the CTU's 1987–88 fair share fee notice. In that order, the court concluded that the 1987–88 notice adequately protected plaintiffs' constitutional rights. 699 F.Supp. 1334 (N.D. Ill.1988). Nonetheless, this court's approval of the CTU's 1987–88 notice does not absolve defendants from liability for previous infringements of plaintiffs' rights. The Supreme Court has ruled that the CTU's 1982–83 scheme for collecting fair share fees violated plaintiffs' rights under the First and Fourteenth Amendments. *See Chicago Teachers Union, Local No. 1 v. Hudson,* 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). Clearly, the Supreme Court's ruling entitles plaintiffs to an award of damages. Up to this point in the litigation, however, this court has not even begun to grapple with the question of damages. Under the Federal Rules of Civil Procedure, a judgment of liability does not become final until a court awards damages or other relief. *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976); *Kaszuk v. Bakery & Confectionery Union,* 791 F.2d 548, 553 (7th Cir.1986). Plaintiffs' counsel should know better than to request the entry of final judgment in a case where the court has not yet assessed damages. Unless plaintiffs wish to waive all claims that the November 16 order left unresolved, this court cannot enter final judgment at this time. While the November 16 order may have decided some of plaintiffs' claims, this litigation continues to present several issues for the court's consideration. For instance, the court must determine the

---

1. For a detailed account of the procedural history of this case, see *Hudson v. Chicago Teachers Union, Local No. 1,* 699 F.Supp. 1334, 1337–39 (N.D.Ill.1988).

amount of damages that plaintiffs should receive in compensation for previous violations of their constitutional rights. In addition, the court must consider plaintiffs' petition for attorneys' fees pursuant to 42 U.S.C. § 1988. At first blush, the performance of plaintiffs' attorneys would seem to merit an award of fees. After all, plaintiffs prevailed in the Supreme Court, vindicating their own rights and persuading the Court to create procedures that safeguard the rights of other nonunion employees. Of course, if plaintiffs' lawyers persist in wasting this court's time with matters like this premature motion for entry of judgment, then Rule 11 sanctions could swallow some or all of the attorneys' fees awarded under § 1988.

 In addition to asking for the entry of judgment, plaintiffs move for a stay of the court's November 16 order pending their appeal of that order. Essentially, plaintiffs seek restoration of the escrow arrangement under which the CTU deposited all of its fair share revenues with the Clerk of the Court. Shortly after the court entered its November 16 order dissolving the previous escrow arrangement, the Clerk released to the CTU all fair share funds held in escrow. Nonetheless, in response to plaintiffs' motion for a stay, the CTU has volunteered to return to the Clerk all fair share fees previously collected from

plaintiffs, as well as any interest accrued on those funds. Additionally, the CTU has offered to deposit all of plaintiffs' future fair share payments with the Clerk pending the resolution of plaintiffs' appeal. The CTU's proposal will adequately protect plaintiffs from the sort of irreparable harm that plaintiffs seek to avert. Therefore, by agreement of the parties, the court orders the CTU to deposit with the Clerk of the Court all fair share fees previously collected from the seven plaintiffs,[2] along with any interest that those funds have accumulated. The court also directs the CTU to place all of plaintiffs' future fair share payments in the Clerk's escrow account pending plaintiffs' appeal of the November 16 order.[3] Because the CTU's escrow proposal effectively provides plaintiffs with injunctive relief, plaintiffs' motion for a stay raises a moot issue. Consequently, the court denies plaintiffs' motion for a stay of the November 16 order pending appeal.

IT IS SO ORDERED.

2. Plaintiffs argue that the Clerk of the Court should hold all of the CTU's fair share proceeds in escrow pending appeal. Plaintiffs' proposed escrow would include fees paid by nonunion employees who have not participated in this lawsuit. In this court's view, plaintiffs have failed to justify the creation of such a comprehensive escrow arrangement. When considering whether to grant a stay pending appeal, the court must determine "whether *the applicant* will be irreparably injured absent a stay." *Hilton v. Braunskill,* 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724 (1987) (emphasis added). In applying for a stay in the instant case, plaintiffs have not demonstrated that they personally would suffer irreparable harm if their coworkers' fair share payments are not placed in escrow pending appeal.

3. Although plaintiffs assert that they would suffer irreparable harm if the CTU continued to collect fair share fees, this court sees no reason to suspend the CTU's collection of plaintiffs' fees while plaintiffs' appeal pends. Even plaintiffs

do not seek a moratorium on the CTU's collection of fair share fees. Instead, plaintiffs simply ask the court to reinstate the previous escrow arrangement. Under plaintiffs' own proposal, the CTU could continue to collect fair share fees so long as the CTU deposited those fees with the Clerk of the Court. Apparently, plaintiffs recognize that the only real danger of irreparable injury in this case stems not from the mere collection of fair share fees, but from "the Union's spending a part of [those] fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative." *Abood v. Detroit Board of Education,* 431 U.S. 209, 234, 97 S.Ct. 1782, 1799, 52 L.Ed.2d 261 (1977). By mandating the escrow of plaintiffs' future fair share payments pending appeal, this court has taken sufficient steps to prevent the sort of irreparable injury that the Supreme Court identified in *Abood.* In light of the precautions already taken by this court, the CTU need not discontinue its collection of plaintiffs' fair share fees.