**NATIONAL TREASURY EMPLOYEES UNION, et al., Appellants,**

v.

**UNITED STATES of America, et al., Appellees.**

**Nos. 90–5406, 90–5407 and 90–5413.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 29, 1991.

Decided March 15, 1991.

Gregory O'Duden and Anne M. Wagner, for appellants in all cases. Also on the joint brief were Elaine Kaplan, Barbara A. Atkin, Cary P. Sklar, David F. Klein, Mark D. Roth, John Vanderstar, Vicki J. Larson, Francisco J. Pavia, Steven R. Shapiro, Arthur Spitzer, Elizabeth Simonds, and Leslie A. Harris.

John C. Hoyle, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., and Michael Jay Singer, Atty., Dept. of Justice, were on the brief, for appellees in all cases. Robert E. Kopp and Robert V. Zener, Attys., Dept. of Justice, also entered appearances for appellees.

Lloyd N. Cutler, Roger M. Witten, and Carol F. Lee were on the brief for amicus curiae urging that the court deny appellants' emergency motion for a preliminary injunction.

Before MIKVA, Chief Judge, and SENTELLE and THOMAS, Circuit Judges.

Opinion for the Court filed by Circuit Judge CLARENCE THOMAS.

CLARENCE THOMAS, Circuit Judge:

The National Treasury Employees Union, the American Federation of Government Employees, and a group of federal employees earning salaries below grade GS–16 seek to enjoin preliminarily the enforcement of Title VI of the Ethics Reform Act of 1989. They contend that Title VI's ban on honoraria violates their First Amendment rights to make appearances, deliver speeches, and write articles for compensation. The district court denied the appellants' requests for preliminary relief on the ground that they could comply with Title VI for now without suffering irreparable injury. We affirm on the same ground.

I.

On November 30, 1989, Congress passed the Ethics Reform Act of 1989, Pub.L. No. 101–194, 103 Stat. 1716. Effective January 1, 1991, Title VI of the Act, 103 Stat. at 1760–63 (codified at 5 U.S.C.A. App. §§ 501–505 & 26 U.S.C.A. § 7701(k) (Supp. 1990)), bans virtually all federal employees (but not Senators or their staff) from re-

ceiving honoraria as long as they remain in the government's employ. See 5 U.S.C.A. App. §§ 501(b), 505(1), (2). An honorarium is "a payment of money or any thing of value for an appearance, speech or article." *Id.* § 505(3). Violators of the ban are subject to civil penalties of up to $10,000 or the amount of the honorarium, whichever is greater. *See id.* § 504(a).

On January 17, 1991, the Office of Government Ethics (OGE) promulgated interim regulations implementing Title VI with respect to officers and employees in the executive branch. *See* 56 Fed.Reg. 1721–30 (to be codified at 5 C.F.R. § 2636.101–.307). Under the regulations, an executive-branch employee may receive several types of payments in connection with speaking or writing activities without violating Title VI. Some of these payments include: "[a]ctual and necessary travel expenses," *id.* at 1725 (to be codified at 5 C.F.R. § 2636.203(a)(4)); "[a]ctual expenses in the nature of typing, editing and reproduction costs," *id.* (to be codified at 5 C.F.R. § 2636.203(a)(5)); and "[m]eals or other incidents of attendance, such as waiver of attendance fees or course materials furnished as part of the event at which an appearance or speech is made," *id.* (to be codified at 5 C.F.R. § 2636.203(a)(2)). An employee also may arrange for an honorarium to be paid directly to a charitable organization. *See id.* at 1726 (to be codified at 5 C.F.R. § 2636.204).

When in doubt whether particular compensation is lawful, an employee may request an advisory opinion from an agency ethics official. *See* 5 U.S.C.A. App. § 504(b); 56 Fed.Reg. at 1723–24 (to be codified at 5 C.F.R. § 2636.103). "An employee who engages in conduct in good faith reliance upon an advisory opinion . . . shall not be subject to civil or disciplinary action. . . ." *Id.* at 1724 (to be codified at 5 C.F.R. § 2636.103(c)).

In December 1990, the National Treasury Employees Union (NTEU), the American Federation of Government Employees (AFGE), and several individuals brought three separate suits challenging the constitutionality of Title VI's honoraria ban.

NTEU argued that the ban violates the First Amendment rights of government employees earning salaries below grade GS–16. AFGE and the individual employees also challenged the ban on vagueness, overbreadth, equal protection, and due process grounds. All three complaints sought declaratory and injunctive relief.

On December 20, 1990, twelve days before the ban's effective date, the district court consolidated the three actions, held a hearing, and denied the appellants' requests for a temporary restraining order and a preliminary injunction. The court concluded that although the appellants had posed a "substantial legal question," they had not demonstrated that they would sustain irreparable injury absent preliminary relief.

## II.

A party is entitled to a preliminary injunction only if it proves that "(1) it has a substantial likelihood of succeeding on the merits; (2) it will suffer irreparable harm if the injunction is not granted; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) the public interest will be furthered by the injunction." *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.1989). The district court denied the appellants' requests for a preliminary injunction on the ground that they had failed to prove that they would suffer any irreparable injury. For the same reason, we affirm.

The appellants assert that they are entitled to preliminary relief because the ban would discourage them from appearing, speaking, or writing. They correctly point out that "[t]he loss of First Amendment freedoms, for even minimal periods of time," may constitute irreparable injury. *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976). A preliminary injunction is not appropriate, however, "unless the party seeking it can demonstrate that 'First Amendment interests [are] either threatened or in fact being impaired at the time relief [is] sought.'" *Wagner v. Taylor,* 836 F.2d 566, 577 n. 76 (D.C.Cir.1987) (quoting *Elrod,* 427 U.S. at

373, 96 S.Ct. at 2690). The appellants have shown neither. Nothing in the record convinces us that the appellants will cease speaking or writing before the district court resolves their constitutional challenges.

Many of the appellants state that they cannot afford to pay the expenses they incur in connection with their First Amendment activities. The ban does not preclude them from recovering these costs, however. The Act and the OGE regulations expressly exclude "actual and necessary travel expenses" from the definition of an honorarium. *See* 5 U.S.C.A. App. § 505(3); 56 Fed. Reg. at 1725 (to be codified at 5 C.F.R. § 2636.203(a)(4)). An employee need not receive a direct reimbursement to recover his travel costs; he complies with the honoraria ban as long as he does not earn income for his speaking or writing in excess of his actual and necessary travel expenses. *See* 5 U.S.C.A. App. § 505(3); 56 Fed.Reg. at 1725 (to be codified at 5 C.F.R. § 2636.203(a)(4)). The regulations also exclude from the honoraria ban "[a]ctual expenses in the nature of typing, editing and reproduction costs," *id.* (to be codified at 5 C.F.R. § 2636.203(a)(5)), and "[m]eals or other incidents of attendance, such as waiver of attendance fees or course materials furnished as part of the event at which an appearance or speech is made," *id.* (to be codified at 5 C.F.R. § 2636.203(a)(2)). Fairly read, these provisions encompass all of the necessary expenses that the appellants incur.[1]

The appellants further contend that without a financial incentive, they will be unwilling to continue writing or speaking. Some assert that they must earn money to supplement their government wages.[2] We recognize that over the long term, the ban might reduce, or even eliminate, the willingness of government employees to pursue certain remunerative First Amendment activities. But forseeable long-term effects do not entitle the appellants to preliminary, injunctive relief. *See Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir.1985) ("Injunctive relief 'will not be granted against something merely feared as liable to occur at some indefinite time....'" (quoting *Connecticut v. Massachusetts*, 282 U.S. 660, 674, 51 S.Ct. 286, 291, 75 L.Ed. 602 (1931))). All but one of the appellants who contend that they are likely imminently to stop writing or speaking (or working for the government) assume that they cannot recover expenses under the ban.[3] As we have explained, their assumption is erroneous. The other appellant, Dr. George J. Jackson, predicts that newspapers will not publish his articles unless he accepts payment in return. *See* Affidavit of Dr. George J. Jackson ¶ 6 (Dec. 14, 1990). For now, Dr. Jackson can instruct the papers to pay directly to charities, or to pay into escrow, *see infra* at 1256. Moreover, many of the appellants admit that any break in their writing or speaking activities might permanently harm their professional reputations, which would remain valuable to them should they ultimately prevail on the merits.[4] We are confident that these appellants will continue to speak, at least over the short term. The appellants therefore have failed to persuade us that they will stop engaging in First Amendment conduct while the constitutionality of the ban on honoraria remains in doubt.

Finally, the appellants point out that if we do not grant them preliminary relief, they will not be paid for speaking or writ-

---

1. *See, e.g.,* Affidavit of Jan Adams Grant ¶ 11 (Dec. 13, 1990) (research and writing costs); Affidavit of David Hubler ¶ 4 (Dec. 10, 1990) (miscellaneous costs incurred in travel writing); Affidavit of Sharon Kennedy ¶ 8 (Dec. 27, 1990) (cost of admission to and dinners at artistic and theatrical events).

2. *See, e.g.,* Affidavit of John C. Shelton ¶ 8 (Dec. 15, 1990) ("I will not be able to continue making payments on my mortgage if I have to give up the income from my writing.").

3. *See, e.g.,* Affidavit of William H. Feyer ¶ 7 (Dec. 13, 1990); Grant aff. ¶¶ 11, 13, 14; Kennedy aff. ¶ 8; Shelton aff. ¶¶ 3, 4.

4. *See, e.g.,* Affidavit of Judith Lynne Hanna ¶ 11 (Dec. 17, 1990); Grant aff. ¶ 14; Hubler aff. ¶ 5; Affidavit of Arnold A. Putnam ¶ 6 (Dec. 13, 1990).

ing before the district court rules on the merits. But "temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 953, 39 L.Ed.2d 166 (1974); *see Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."). The appellants can put their compensation into escrow during the pendency of this litigation. If they succeed on their constitutional challenges, they can recover any honoraria paid into those accounts. *Cf. Hudson v. Chicago Teachers Union, Local 1,* 708 F.Supp. 961, 963 (N.D. Ill.1989) (holding that defendant's proposed escrow arrangement would "adequately protect plaintiffs from the sort of irreparable harm that plaintiffs seek to avert"). If the appellants fail, then they were never entitled to the compensation in the first place.

## III.

The appellants have not demonstrated that they will suffer irreparable injury absent preliminary relief. The district court's denial of their request for a preliminary injunction is therefore

*Affirmed.*