**AMERICAN MINING CONGRESS, et al., Plaintiffs,**

v.

**U.S. ARMY CORPS OF ENGINEERS, et al., Defendants.**

**No. Civ.A. 93–1–754 SSH.**

United States District Court,
District of Columbia.

Sept. 13, 2000.

Virginia S. Albrecht, Hunton & Williams, Washington, DC, Thomas C.

Jackson, Beveridge & Diamond, Washington, DC, for plaintiffs.

Eileen T. McDonough, Mary F. Edgar, U.S. Department of Justice, Environmental Defense Section, Washington, DC, Steven Neugeboren, U.S. Environmental Protection Agency, Office of Enforcement, Washington, DC, Ronald M. Spritzer, U.S. Department of Justice, Civil Division, Washington, DC, Howard Irving Fox, Earth Justice Legal Defense Fund, Washington, DC, Robert K. Best, Pacific Legal Foundation, Sacramento, CA, Robert J. Saner, Powers, Pyles, Sutter & Verville, Washington, DC, Paul D. Kamenar, Washington Legal Foundation, Washington, DC, for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are plaintiff's Motion To Compel Compliance With The Court's Injunction, oppositions thereto filed by defendants and intervenor-defendants, and plaintiff's reply.[1] Plaintiff seeks to compel compliance with the terms of an injunction entered by the Court on January 23, 1997, barring defendants from applying or enforcing a regulation promulgated under the Clean Water Act ("CWA" or the "Act") known as the "Tulloch Rule." Upon consideration of the entire record, the Court denies plaintiff's motion.

## BACKGROUND

Because the background to this litigation is set forth more fully in the Court's earlier Opinion, *American Mining Congress v. United States Army Corps of Eng'rs*, 951 F.Supp. 267 (D.D.C.1997) (hereinafter "*AMC*"), and the Court of Appeals' decision affirming that Opinion, *National Mining Ass'n v. United States*

1. Plaintiff, National Association of Home Builders ("NAHB"), is a trade association; defendants are the United States Army Corps of Engineers (the "Corps") and the United States Environmental Protection Agency (the "EPA") (collectively, the "agencies" or "defendants"); intervenor-defendants are the National Wildlife Federation, the North Carolina Wildlife Federation, the National Audubon Society, and the Sierra Club. Also before the Court are intervenor-defendants' notice of supplemental authority, plaintiff's response thereto, and various notices filed in support of plaintiff's motion by trade associations.

*Army Corps of Eng'rs,* 145 F.3d 1399 (D.C.Cir.1998) (hereinafter *"NMA"*), the Court provides only a brief summary here. Section 404 of the Act authorizes the Corps to issue permits "for the discharge of dredged or fill material into the navigable waters at specific disposal sites." 33 U.S.C. § 1344(a). The "discharge of any pollutant by any person" is unlawful unless in compliance with, *inter alia,* § 404. *Id.* § 1311(a). The Act defines "discharge" as "any addition of any pollutant to navigable waters from any point source." *Id.* § 1362(12). "Pollutants" include "dredged spoil." *Id.* § 1362(6). The term "navigable waters" has been expanded—unduly casually, in this Court's respectful opinion—to include wetlands for the purposes of the Act. *See United States v. Riverside Bayview Homes, Inc.,* 474 U.S. 121, 131–34 & n. 8, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985) (upholding as not unreasonable the Corps' exercise of CWA jurisdiction "over wetlands adjacent to but not regularly flooded by rivers, streams, and other hydrographic features more conventionally identifiable as 'waters,'" and noting that "the Corps must necessarily choose some point at which water ends and land begins ... [which] is often no easy task: the transition from water to solid ground is not necessarily or even typically an abrupt one.").

In 1986, the Corps issued a regulation defining the term "discharge of dredged material," as used in § 404, to mean "any addition of dredged material into the waters of the United States"; the definition, however, expressly excluded "de minimis, incidental soil movement occurring during normal dredging operations." 51 Fed.Reg. 41,206, 41,232 (Nov. 13, 1986). In 1993,

pursuant to a settlement agreement reached in a lawsuit filed by environmental groups, the Corps issued a new regulation—the so-called "Tulloch Rule"—which removed the de minimis exception, and expanded the definition of "discharge of dredged material" under § 404 to include "[a]ny addition, including any redeposit, of dredged material, including excavated material, into waters of the United States which is incidental to any activity, including mechanized landclearing, ditching, channelization, or other excavation." *NMA,* 145 F.3d at 1402 (quoting former 33 C.F.R. § 323.2(d)(1)(iii)).[2] This expanded definition now covered incidental fallback, which is the "incidental soil movement from excavation, such as the soil that is disturbed when dirt is shoveled, or the back-spill that comes off a bucket and falls back into the same place from which it was removed."[3] *AMC,* 951 F.Supp. at 270. Because mechanized landclearing, ditching, channelization, and other excavation activity inevitably cause incidental fallback, *see* 58 Fed.Reg. at 45,017, the Tulloch Rule effectively required a § 404 permit for almost all dredging and excavation performed in wetlands.[4]

In 1993, the plaintiffs in this case—NAHB and other trade associations whose members engage in dredging and excavation—challenged the Tulloch Rule on the ground that it exceeded the agencies' authority under the Act. As discussed, the agencies' permitting authority under § 404 extends only to "discharge," which is defined as the "addition of any pollutant to navigable waters." 33 U.S.C. §§ 1344, 1362(12). Plaintiffs argued that incidental fallback does not constitute an "addition"

**2.** The EPA promulgated a parallel regulation which was codified at 40 C.F.R. § 232.2(1)(iii).

**3.** As the Court explained in its earlier Opinion, "[i]ncidental fallback does not include soil movements away from the original site. 'Sidecasting,' which involves placing removed soil alongside a ditch, and sloppy disposal practices involving significant discharges into waters, have always been subject to § 404."

*AMC,* 951 F.Supp. at 270 n. 4 (citing 58 Fed.Reg. 45,008, 45,013 (Aug. 25, 1993)).

**4.** The Tulloch Rule provided a small exception to the permit requirement for activities that the Corps deemed to produce no adverse effects on the waters of the United States. *NMA,* 145 F.3d at 1403 (citing former 33 C.F.R. § 323.2(d)(3)(i)).

of material, and thus cannot be regulated under § 404. The Court agreed, and entered summary judgment in plaintiffs' favor on January 23, 1997. *AMC,* 951 F.Supp. at 269. The Court concluded that Congress did not intend to cover incidental fallback under § 404. *Id.* at 271–78. Accordingly, the Court invalidated the Tulloch Rule, and enjoined the agencies from applying or enforcing it. *Id.* at 278. The Court of Appeals affirmed the Court's Opinion on June 19, 1998, holding that "by asserting jurisdiction over 'any redeposit,' including incidental fallback, the Tulloch Rule out[ran] the Corps's statutory authority." *NMA,* 145 F.3d at 1405. The Court of Appeals quite logically also upheld the nationwide scope of the Court's injunction. *Id.* at 1409–10.

Plaintiff NAHB's motion to compel asserts that the agencies continue to apply the Tulloch Rule in violation of the Court's Order. Plaintiff argues that the agencies have violated the Court's Order by (1) regulating the incidental soil movements that occur during mechanized landclearing performed by one of its members, False Cape Enterprises, Inc. ("False Cape"), at a development site in Virginia Beach, Virginia; (2) demanding that False Cape obtain a § 404 permit to ditch in waters of the United States; and (3) asserting unqualified authority to regulate redeposits incidental to mechanized landclearing in a rule promulgated on May 10, 1999, in response to the Court's Order (the "May 10th Rule"). Although plaintiff contends that the agencies have violated the Court's injunction, plaintiff asks only that the Court

clarify the terms of its injunction and direct the agencies to amend their revised rule in accordance with such a clarification.[5] As set forth below, the Court denies plaintiff's request for relief.

## ANALYSIS

Plaintiff's allegations that defendants are violating the Court's injunction broadly concern two spheres of activity: defendants' regulation of False Cape's landclearing and ditching operations, and defendants' promulgation of the May 10th Rule. The Court first addresses plaintiff's objections to the May 10th Rule because this bears on its resolution of plaintiff's objections to defendants' regulation of False Cape.

### A. *The May 10th Rule*

The agencies promulgated the May 10th Rule in response to this Court's decision in *AMC* and the Court of Appeals' decision in *NMA. See* 64 Fed.Reg. 25,120 (May 10, 1999). The rule modifies the definition of "discharge of dredged material" by removing the reference to "any redeposit," and by adding language indicating that the definition does not cover incidental fallback. Accordingly, the regulations now define discharge of dredged material as:

> any addition of dredged material into, including redeposit of dredged material other than incidental fallback within, the waters of the United States. The term includes ... (iii) Any addition, including redeposit other than incidental fallback,

---

5. Specifically, plaintiff asks the Court to enter an order that:

clarif[ies] its original injunction to direct the Defendants: (1) to stop asserting Section 404 jurisdiction over removal activities, such as mechanized landclearing, by indiscriminately regulating the redeposits incidental to those activities; (2) in particular, to stop regulating mechanized landclearing activities where the only basis for doing so is either (a) the displacing of soils, sediments, debris, or vegetation incidental to the use of root rakes, or (b) excavating root systems or knocking or uplifting trees and

stumps; (3) to stop asserting jurisdiction over activities which are beyond their Section 404 jurisdiction such as ditching, because some other jurisdictional activity may have occurred previously or elsewhere on the property; (4) to amend their May 10 Rule promptly to reflect the three above-mentioned requirements, including, without limitation, that removal activities are not regulated by Section 404 and that small-volume soil movements incidental to removal activities are also not regulated.

Pl.'s Motion at 2–3.

of dredged material, including excavated material, into waters of the United States which is incidental to any activity, including mechanized landclearing, ditching, channelization, or other excavation.

33 C.F.R. § 323.3(d)(1)(iii). Another subsection underscores that the term does not include "incidental fallback." *Id.* § 323.3(d)(2)(iii).

The preamble to the May 10th Rule states that the revision "does not alter the well-settled doctrine, recognized in *NMA*, that some redeposits of dredged material in waters of the United States constitute a discharge of dredged material and therefore require a section 404 permit." 64 Fed.Reg. at 25,121. Further, the May 10th Rule is only an interim provision designed to comply with the Court's injunction until the agencies "undertake notice and comment rulemaking that will make a reasoned attempt to more clearly delineate the scope of CWA jurisdiction over redeposits of dredged material in waters of the U.S." *Id.* Until this formal rulemaking is completed, the agencies will decide on a case-by-case basis whether a particular redeposit is subject to CWA jurisdiction and, more specifically, whether a "particular redeposit constitutes incidental fallback and, under the court's decision is not subject to section 404." *Id.*

Plaintiff contends that defendants have violated the Court's injunction because, in the May 10th Rule, they assert "unqualified authority" to regulate redeposits incidental to mechanized landclearing. Defendants counter that the Court does not have jurisdiction to consider whether the May 10th Rule is consistent with the Court's injunction because plaintiff must file a new action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, in order to obtain judicial review of the May 10th Rule. In any event, defendants maintain, the May 10th Rule is consistent with the decisions in *AMC* and *NMA*. The Court concludes that it has jurisdiction to review the May 10th Rule, and that the May 10th Rule does not violate the Court's injunction.

### 1. The Court Has Jurisdiction To Review the May 10th Rule.

A district court retains jurisdiction to enforce the terms of a previously entered injunction. *See, e.g., Gunn v. University Comm. to End War in Viet Nam,* 399 U.S. 383, 388, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970) ("An injunctive order is an extraordinary writ, enforceable by the power of contempt"); *McCall–Bey v. Franzen,* 777 F.2d 1178, 1183 (7th Cir. 1985) ("When an equity case ends in a permanent injunction, the trial court, with or without an explicit reservation of jurisdiction, retains jurisdiction to enforce the injunction, as by contempt proceedings"); *Springs Mills, Inc. v. Ultracashmere House, Ltd.,* 724 F.2d 352, 356 (2d Cir. 1983) ("the district court, of course, has a continuing obligation of enforcing the injunctive order by the power of contempt, if necessary"). Defendants seek to prevent the Court from exercising this well-established jurisdiction on the ground that plaintiff's only mechanism for reviewing the May 10th Rule for compliance with the Court's injunction is to file a new lawsuit under the APA. The Court, however, sees no valid reason to construe the APA as curtailing a court's inherent power to enforce compliance with the terms of its injunction in this manner.[6] Indeed, to find such a curtailment, and require plaintiff to

---

6. Defendants' citation to this Court's Opinion in *Sanjour v. E.P.A.,* 7 F.Supp.2d 14 (D.D.C. 1998), is unavailing. In *Sanjour,* the Court entered a government-wide injunction barring the enforcement of certain ethical rules for federal employees held unconstitutional by the Court of Appeals. 7 F.Supp.2d at 17. The Court rejected the argument that such an injunction would interfere with the government's authority to promulgate new regulations, reasoning that the Court would not be involved in the process of promulgating new regulations. *Id.* The Court, however, did not disavow the power to review the new regulations for compliance with its injunction.

file a new lawsuit under the APA, would undermine the role of an injunction as a "swift and effective remedy, summarily enforceable through contempt or other supplementary proceedings." *McCall–Bey*, 777 F.2d at 1183. Thus, the Court finds that it has jurisdiction to review the May 10th Rule. *See Estate of Smith v. Bowen*, 675 F.Supp. 586 (D.Colo.1987) (reviewing agency's notice of proposed rulemaking adopted in response to court order and court of appeals mandate for compliance with order and mandate). Of course, the Court limits the scope of its review to whether the rule is consistent with the Court's injunction.

**2. The May 10th Rule Does Not Violate the Court's Injunction By Asserting Unqualified Authority To Regulate Mechanized Landclearing**

■ Plaintiff alleges that the May 10th Rule violates the Court's injunction because it "categorically assert[s] that redeposits associated with mechanized landclearing are subject to CWA jurisdiction." Pl.'s Mem. in Support of Motion at 20. Related to this claim is plaintiff's assertion that *AMC* and *NMA* invalidated the regulation of not only incidental fallback, but all small-volume soil movements incidental to mechanized landclearing. *Id.* at 22. The Court finds that the May 10th Rule does not assert unqualified authority to regulate mechanized landclearing.

The Court reviews the *AMC* and *NMA* decisions to clarify the scope of its injunction. In *AMC*, the Court enjoined the agencies from applying or enforcing the Tulloch Rule because it concluded that they had exceeded their authority under the CWA by regulating incidental fallback.[7] The Court's analysis clearly fo-

cused on the impermissibility of regulating incidental fallback. *See AMC*, 951 F.Supp. at 272 ("Thus, the issue in this case is whether the incidental fallback that accompanies landclearing and excavation activities is (1) the discharge of dredged material, *i.e.*, the addition of a pollutant, (2) at specified disposal sites."); *id.* ("The Court concludes that neither § 301 nor § 404 covers incidental fallback."); *id.* at 274 ("Congress, through its lack of amendment, ratified 18 years of agency and judicial interpretation that excluded incidental fallback from § 404"); *id.* ("the case law suggests that the Act does not authorize the agencies to regulate incidental fallback"). In *NMA*, the Court of Appeals agreed that the agencies had exceeded their statutory authority by regulating incidental fallback. *NMA*, 145 F.3d at 1405 ("We hold only that by asserting jurisdiction over 'any redeposit,' including incidental fallback, the Tulloch Rule outruns the Corps's statutory authority"); *id.* at 1410 (Silberman, J., concurring) ("the structure of the relevant statutes indicates that it is unreasonable to call incidental fallback an addition"). Moreover, the court emphasized that its holding did not bar the Corps from regulating some form of redeposit under its § 404 permit authority:

> Since the Act sets out no bright line between incidental fallback on the one hand and regulable redeposits on the other, a reasoned attempt by the agencies to draw such a line would merit considerable deference.... But the Tulloch Rule makes no effort to draw such a line, and indeed its overriding purpose appears to be to expand the Corps's permitting authority to encompass incidental fallback and, as a result, a wide range of activities that cannot remotely

---

7. In their notice of supplemental authority, intervenor-defendants argue that *United States v. Deaton*, 209 F.3d 331 (4th Cir.2000), supports denying plaintiff's motion. In *Deaton*, the Fourth Circuit held that "the Clean Water Act's definition of discharge as 'any addition of any pollutant to navigable waters' encompasses sidecasting in a wetland." *Id.*

at 337. Because the Court in *AMC* enjoined the agencies from regulating incidental fallback, and distinguished between incidental fallback and sidecasting, *see supra* note 3, *Deaton* is of no relevance to determining the agencies' compliance with the Court's injunction.

be said to 'add' anything to the waters of the United States. *Id.* Inasmuch as this Court in *AMC*, and the Court of Appeals in *NMA*, invalidated the Tulloch Rule because it regulated incidental fallback, the Court's order enjoining the agencies from applying or enforcing the Tulloch Rule must be understood to bar the agencies from regulating incidental fallback.[8]

The May 10th Rule is facially consistent with the Court's injunction because it eliminates § 404 jurisdiction over incidental fallback, and removes the language asserting jurisdiction over "any" redeposit of dredged material. The rule makes clear that the agencies may not exercise § 404 jurisdiction over redeposits of dredged material to the extent that the redeposits involve only incidental fallback. 64 Fed. Reg. at 25,121 ("Determining whether a particular redeposit constitutes incidental fallback and, under the court's decision is not subject to section 404, will also require evaluation on a case-by-case basis"). In light of this acknowledged limitation on the agencies' § 404 power, the Court finds that the rule does not assert "unqualified" authority on behalf of the agencies to regulate redeposits incidental to mechanized landclearing.[9] Furthermore, taking a cue from *NMA*'s statement that a reasonable attempt to distinguish between incidental fallback and regulable redeposits would merit judicial deference, the May 10th Rule explains that the agencies will undertake a notice and comment rulemaking to make a "reasoned attempt to more clearly delineate the scope of CWA jurisdiction over redeposits of dredged material." 64 Fed.Reg. at 25,121. In the interim, the agencies will decide whether a particular redeposit constitutes incidental fallback on a case-by-case basis, which they appear entitled to do. *See S.E.C. v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 91

8. Plaintiff contends that this interpretation is too narrow because, when the Court enjoined the agencies from applying or enforcing the Tulloch Rule, "it prohibited the application and enforcement of the *entire rule*, not just the part related to incidental fallback." Pl.'s Reply at 21 (emphasis in original). Plaintiff argues that the Court's injunction must be understood to bar the application and enforcement of the effects-based test of jurisdiction as well, *see supra* note 4, because the Court also rejected this component of the Tulloch Rule in a lengthy footnote. *AMC*, 951 F.Supp. at 275 n. 18. Nevertheless, the Court rejected this test because the agencies were using it to assert jurisdiction over otherwise non-regulable activities; the Court expressly did not determine whether the effects-based test of jurisdiction would be valid if applied to activities that otherwise come within the scope of the Act. *Id.* ("In neither case [cited by the agencies in support of the effects-based test], however, are effects used to regulate activities that do not themselves constitute discharges"). Thus, where the effects-based test is not applied to otherwise non-regulable activities under the Act (such as incidental fallback), the Court's injunction does not bar its application.

9. Plaintiff alleges that the May 10th Rule improperly states that the Fifth Circuit's decision in *Avoyelles Sportsmen's League, Inc. v. Marsh*, 715 F.2d 897 (5th Cir.1983), gives it unqualified authority to regulate redeposits incidental to mechanized landclearing. The passage about which plaintiff complains states: "Judicial decisions have established, and the D.C. Circuit recognized in *NMA*, that redeposits associated with [mechanized landclearing] are subject to CWA jurisdiction.... *See also, Avoyelles Sportsmen's League v. Marsh*, 715 F.2d 897 (5th Cir.1983) (mechanized landclearing requires section 404 permit)." 64 Fed.Reg. at 25,121. It is unclear whether defendants cite *Avoyelles* for the proposition plaintiff claims because the parenthetical phrase following the citation is susceptible of two interpretations: that mechanized landclearing always requires a § 404 permit, or that mechanized landclearing sometimes requires a § 404 permit. In light of this ambiguity, the Court makes the following observation: to the extent defendants claim that, under *Avoyelles*, mechanized landclearing always requires a permit, their claim is incorrect because the *NMA* court indicated that *Avoyelles* cannot be read to require a permit for mechanized landclearing where it produces only incidental fallback, *see NMA*, 145 F.3d at 1406; to the extent defendants cite *Avoyelles* for the less remarkable proposition that mechanized landclearing may require a permit where it produces an otherwise regulable discharge under § 404, their interpretation is permissible under *NMA*, *see id.* at 1406-07.

L.Ed. 1995 (1947) (agency has discretion to choose between proceeding by general rule or adjudication); *SBC Communications, Inc. v. F.C.C.*, 138 F.3d 410, 421 (D.C.Cir. 1998) (same). Thus, the May 10th Rule does not violate the Court's injunction because it is consistent with the decisions in *AMC* and *NMA*.

The Court observes that, to the extent plaintiff argues that the May 10th Rule violates the Court's injunction because *NMA* invalidated the regulation of all small-volume soil movements incidental to mechanized landclearing, and not only incidental fallback, its argument more appropriately bears on the scope of "incidental fallback." Plaintiff appears to acknowledge this point because it argues that the agencies have set forth an unduly narrow interpretation of the term. *See* Pl.'s Reply at 10–15. Plaintiff contends that the scope of incidental fallback must be construed by considering the extent of incidental soil movements that the Tulloch Rule sought to bring within the scope of § 404 jurisdiction. Because the preamble to the Tulloch Rule states that the rule extended the agencies' § 404 jurisdiction to "relatively small-volume, 'incidental' discharges of dredged material that unavoidably accompany [mechanized landclearing, ditching, channelization, and other excavation activities]," *see* 58 Fed.Reg. at 45,013, plaintiff argues that the definition of incidental fallback should include all small-volume soil movements incidental to this activity, and asks the Court to clarify its injunction to state that these soil movements will never give rise to § 404 jurisdiction.

Although the Court does not doubt that the small-volume soil movements identified by plaintiff will often constitute incidental fallback, it declines to "clarify" its injunction in the manner requested by plaintiff. In *NMA*, the Court of Appeals stated that a reasonable attempt by the agencies to distinguish between non-regulable incidental fallback and regulable redeposits would warrant considerable judicial deference. As discussed, the agencies take the posi-

tion that they are undertaking such an attempt and, for the time being, are evaluating whether a particular redeposit constitutes incidental fallback on a case-by-case basis. Indeed, the May 10th Rule disclaims any attempt to espouse a fixed definition of incidental fallback. *See* 64 Fed.Reg. at 25,121 ("We have not attempted to draw such a line [between incidental fallback and regulable redeposits] here"). In light of the Court of Appeals' statements in *NMA* and the agencies' impending rulemaking, the Court will not inject itself into the detailed process of determining the scope of incidental fallback by declaring that certain redeposits identified by plaintiff will always constitute incidental fallback.

Nevertheless, the Court comments briefly on the scope of incidental fallback to ensure that the effect of its injunction is not limited by an unduly narrow definition of the term. Although the May 10th Rule disclaims any intent to establish a fixed definition of incidental fallback, it does describe it as "the return of dredged material virtually to the spot from which it came." *See* 64 Fed.Reg. at 25,120 n. 1. Intervenor-defendants argue more forcefully for this definition in their opposition. *See* Intervenor–Defs.' Opp'n at 15 and 33 n. 14. The asserted basis for limiting incidental fallback in this manner is the following statement in *NMA:* "[Plaintiffs] argue that fallback, which returns dredged material virtually to the spot from which it came, cannot be said to constitute an addition of anything." *NMA*, 145 F.3d at 1402. This statement, however, should not be read to limit incidental fallback to the return of material to "virtually" the exact spot of removal because, in another portion of its opinion, the *NMA* court provided a less restrictive formulation of incidental fallback—material that is returned *substantially* to the same spot as the removal—and described a number of examples of incidental fallback that do not necessarily return material "virtually" to the spot from

which it came.[10] *Id.* at 1403. Furthermore, limiting incidental fallback to material returned "virtually" to the spot of removal does not comport with the Court's understanding of incidental fallback in *AMC*, which the *NMA* court did not question:

> Incidental fallback is the incidental soil movement from excavation, such as the soil that is disturbed when dirt is shoveled, or the back-spill that comes off a bucket and falls back into the same place from which it was removed.... [It] does not add material or move it from one location to another; some material simply falls back in the same general location from which most of it was removed.

*AMC*, 951 F.Supp. at 270, 273. Nor does the more restrictive formulation accord with that advocated by the agencies before the *NMA* court: "fallback involves some relocation of dredged material, although the material most frequently will be redeposited in the general area from which it was excavated." Pl's Reply, App. 8 (agencies' final opening brief). Thus, although the Court will let the agencies ultimately define the proper scope of incidental fallback, it cautions them against parsing the language of the decisions in *NMA* and *AMC* to render a narrow definition of incidental fallback that is inconsistent with an objective and good faith reading of those decisions.

## B. *False Cape Activity*

As discussed, False Cape is engaging in excavation activities at a development site in Virginia Beach, Virginia. Plaintiff challenges defendants' regulation of False Cape's activities in two respects. First, plaintiff argues that defendants have violated the Court's injunction by asserting jurisdiction over False Cape's mechanized landclearing, which involves soil movements primarily caused by the removal of tree stumps and the use of root rakes; plaintiff claims that these soil movements fall outside the agencies' § 404 jurisdiction. *See* Pl.'s Mem. in Support of Motion at 15–17. Second, plaintiff argues that defendants have violated the Court's injunction by requiring False Cape to obtain a permit for ditching because regulated landclearing was a necessary prerequisite to the ditching; plaintiff reiterates that the preceding landclearing was not regulable under § 404, and contends—more broadly—that defendants cannot use a regulable activity, such as landclearing, to assert jurisdiction over an otherwise non-regulable activity, such as ditching. *Id.* at 18–20.

The Court will not scrutinize defendants' actions with respect to False Cape because it is unnecessary to resolve whether plaintiff is entitled to the relief it requests.[11] Plaintiff is not "ask[ing] this Court to declare that False Cape's activities do not require a § 404 permit, nor to enjoin any

---

10. For example, the *NMA* court noted that incidental fallback occurs "during dredging, 'when a bucket used to excavate material from the bottom of a river, stream, or wetland is raised and soils or sediments fall from the bucket back into the water,'" 145 F.3d at 1403 (citing agencies' appellate brief), and "during mechanized landclearing, when bulldozers and loaders scrape or displace wetland soil, ... as well as during ditching and channelization, when draglines or backhoes are dragged through soils and sediments," *id.* (citing 58 Fed.Reg. at 45,017–18).

11. Defendants and intervenor-defendants cite to a line of cases under the CWA prohibiting pre-enforcement review of efforts to enforce compliance with § 404, *see, e.g., Laguna Gatuna, Inc. v. Browner*, 58 F.3d 564, 565 (10th Cir.1995); *Southern Ohio Coal Co. v. Office of Surface Mining, Reclamation & Enforcement*, 20 F.3d 1418, 1425–28 (6th Cir.1994); *Southern Pines Assocs. v. United States*, 912 F.2d 713, 716 (4th Cir.1990), and argue that the Court may not review defendants' actions with respect to False Cape because they are still in the process of determining whether any § 404 violations occurred. None of the cited cases, however, involves a court's power to enforce an existing injunction. Nevertheless, because the Court finds it unnecessary to scrutinize defendants' action with respect to False Cape, it need not resolve whether its inherent power to enforce compliance with its injunction modifies the normal bar on pre-enforcement review.

enforcement action against False Cape.... [It] simply asks the Court to clarify its original injunction to correct Defendants' misunderstanding of this Court's directive to stop applying or enforcing the Tulloch Rule." Pl's Reply at 7. Thus, plaintiff asks the Court to use the facts of defendants' regulation of False Cape to declare, on a general level, that certain activity—specifically, "the displacing of soils, sediments, debris, or vegetation incidental to the use of root rakes, [and] excavating root systems or knocking down or uplifting trees and stumps"—may not be regulated under § 404. Pl.'s Motion at 2. As already discussed, however, the Court is unwilling to state that certain soil movements will always constitute incidental fallback. Thus, the Court denies plaintiff's request to clarify its injunction to exclude, categorically, certain soil movements caused by root rakes and tree removals from the agencies' § 404 jurisdiction.

■ Nor will the Court use the facts of False Cape's activity to direct defendants "to stop asserting jurisdiction over activities which are beyond their Section 404 jurisdiction such as ditching, because some other jurisdictional activity may have occurred previously or elsewhere on the property." *Id.* The Court's injunction bars defendants from regulating incidental fallback; to modify it in the manner requested by plaintiff would unduly expand its scope to cover instances not involving incidental fallback.[12] Furthermore, the Court does not agree with plaintiff that *NMA* deprives defendants of jurisdiction over all ditching activity; *NMA* bars defendants from asserting § 404 jurisdiction over ditching to the extent it involves incidental fallback—*NMA* does not bar defendants from asserting jurisdiction over ditching to the extent it involves redeposits otherwise

regulable under § 404.[13] Thus, the Court declines to broaden its injunction in the manner requested by plaintiff.

Finally, the Court notes that, in their notice of supplemental authority, intervenor-defendants argue that the Fourth Circuit's interpretation of the agencies' § 404 jurisdiction in *Deaton*, discussed *supra* in note 7, is broader than—and in conflict with—that of the D.C. Circuit's interpretation in *NMA*; because False Cape's activity occurs within the territorial jurisdiction of the Fourth Circuit, intervenor-defendants argue that *Deaton*'s interpretation of § 404 controls regulation of that activity, and essentially must modify the territorial scope of the Court's injunction. Intervenor–Defs.' Notice of Suppl. Authority at 4–10. Although the Court finds it unnecessary to scrutinize defendants' actions with respect to False Cape, it disagrees with intervenor-defendants' argument that *NMA* and *Deaton* are somehow in conflict. *Deaton* held only that sidecasting is regulable under § 404; it did not reach the issue of incidental fallback. *Deaton*, 209 F.3d at 337. In any event, *NMA* upheld the nationwide scope of the Court's injunction in this litigation. 145 F.3d at 1409–10. That determination remaining undisturbed, the Court will apply the interpretation of the agencies' § 404 jurisdiction that is set forth in *AMC* and *NMA* in enforcing nationwide compliance with its injunction.

## CONCLUSION

For the foregoing reasons, the Court denies plaintiff's motion to compel compliance with the Court's injunction.[14] An appropriate Order accompanies this Opinion.

---

12. This does not leave regulated parties subject to the jurisdictional whim of defendants. To the extent defendants may be asserting jurisdiction unlawfully, the regulated party may challenge defendants' jurisdiction in the appropriate enforcement proceeding.

13. For example, many ditches are dug by sidecasting, *see* 58 Fed.Reg. at 45,013, which has always been regulated under § 404. *See supra* note 3.

14. Because the Court denies plaintiff's motion to compel, the Court denies as moot intervenor-defendants' motion in the alternative to

defer consideration of plaintiff's motion in    order to permit discovery.