# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-2399

_____

Green Acres Enterprises, Inc.;  Green   *
Acres Land & Cattle Co.; Robert   *
Jenkins; Kris Jenkins; Karl Jenkins;   *
Marsha Jenkins; Hugh Jenkins; Barbara *
Jenkins; W. K. Jenkins; M. Earlene   *
Jenkins; Mary Ann Green; Karla   *
Jenkins Wilson; Patricia Inglish,   *   Appeal from the United States
  *   District Court for the
    Appellants,   *   Western District of Missouri.
  *
    v.   *
  *
United States of America,   *
  *
    Appellee.   *
  *
_____   *
  *
Pacific Legal Foundation,   *
  *
    Amicus on Behalf of   *
    Appellant.   *

_____

Submitted: April 11, 2005
Filed:  August 10, 2005

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Green Acres Enterprises, Green Acres Land & Cattle Co., and the individual owners of each entity (collectively, the landowners) appeal from the district court's[1] grant of the government's motion to dismiss for lack of subject matter jurisdiction. We affirm.

**I.**

The landowners are the former owners of two large properties located along the Marmaton River—also known as the Little Osage River—in Missouri (the "Green Acres farm" and the "Richter farm"). Until April 1998, the landowners farmed portions of both properties and leased other portions to third-party farmers, who planted and harvested the crops on the leased land for themselves. Since the 1960s, each property had been protected from flooding by two large levee systems, which were each composed of the levees themselves, a system of internal drainage ditches, and large pumps that served to draw water from the farms and drainage ditches to the river through pipes embedded in the levees.

Both levee systems, however, suffered extensive damage in the great flood of 1993. The landowners subsequently commenced repairs to the levee systems in the spring of 1994. The government, claiming that such repairs violated the terms of easements granted in favor of the United States Army Corps of Engineers (Corps), obtained an injunction prohibiting the landowners from carrying out the repairs. The landowners appealed, and we held that the easements did not require the landowners to obtain the Corps's consent prior to repairing the levee systems. United States v. Green Acres Enters., Inc., 86 F.3d 130, 135 (8th Cir. 1996) (Green Acres I).

---

[1]The Honorable Fernando J. Gaitan, Jr., United States District Judge for the Western District of Missouri.

Accordingly, we reversed and remanded the case to the district court with instructions to vacate the injunction.[2] Id.

In late 1996, the landowners sought to continue with and complete the repairs to the Green Acres farm levee. The proposed repairs consisted of: (1) excavation of the area surrounding a pump intake to allow the intake to operate properly; (2) excavation of a drainage ditch system to remove silt and sediment deposited there by flooding; (3) expansion of the levee at the pump station to enable vehicles to turn around when fueling the pump; and (4) restoration of various damaged portions of the levee to return them to pre-flood height. The landowners requested a formal determination from the Corps—pursuant to 33 C.F.R. § 320.1(a)(6)—that the repairs would not be subject to or would otherwise be exempted from the Clean Water Act (33 U.S.C. §§ 1251, et seq.).[3]

In February 1997, the Corps sent a letter responding to the landowners' request (the "February 3 letter") and determined that a portion of the proposed work would require a specific Clean Water Act permit (known as a "section 404 permit") because, in the Corps's opinion, the work would involve a discharge of dredged or fill material into the wetlands surrounding the levee system. See 33 U.S.C. § 1344 (dredged and fill material discharge permits); 33 C.F.R. § 328.3(a)(7) ("waters of the United States"

---

[2]Although we held in Green Acres I that the landowners did not require the Corps's consent in order to commence repairs, see 86 F.3d at 135, the easements themselves state that any use of the land must comply with federal and state water quality laws.

[3]The Clean Water Act prohibits the discharge of any pollutant into navigable waters, including "waters of the United States," except in compliance with certain statutory exemptions and permitting procedures. 33 U.S.C. §§ 1311(a), 1362(7) (definition of navigable waters), 1362(12)(A) (definition of discharge). Materials that qualify as pollutants are, *inter alia*, dredged spoil, rock, and sand. 33 U.S.C. § 1362(6).

include wetlands adjacent to protected waters). The Corps also determined that a number of nationwide permits (covering activities for which the landowners would not be required to seek individual approval) were inapplicable to the proposed work and that most of the proposed work was ineligible for either the Clean Water Act's levee maintenance exception, see 33 U.S.C. § 1344(f)(1)(B), or its ditch maintenance exception, see 33 U.S.C. § 1344(f)(1)(C).[4]

The February 3 letter sparked an extended and increasingly contentious series of correspondence between the landowners and the Corps. In their initial response to the February 3 letter, the landowners disputed that the nationwide permits and the ditch maintenance exception were inapplicable. More importantly, the landowners argued that the Corps's determination that a permit was required for the proposed work was squarely in violation of a nationwide injunction entered against the Corps by the United States District Court for the District of Columbia in American Mining Congress v. United States Army Corps of Engineers, 951 F. Supp. 267 (D.D.C. 1997) (American Mining Congress I). The injunction prohibited the Corps from enforcing the so-called Tulloch Rule, which had previously allowed the Corps to exercise Clean Water Act jurisdiction over all excavation activities, including those that resulted only in "incidental fallback," on the theory that such activities almost always resulted in a discharge into waters of the United States.[5] Id. at 270 & n.3.

---

[4]Although the landowners initially disputed that the Corps had determined that the levee maintenance exception was inapplicable, the Corps clarified that determination in a subsequent letter. The Corps contended that while the levee maintenance exception applied to activities on the levee itself, it did not apply to excavation or dredging activities conducted in connection therewith.

[5]The American Mining Congress I court defined incidental fallback as "the incidental soil movement from excavation, such as the soil that is disturbed when dirt is shoveled, or the back-spill that comes off a bucket and falls back into the same place from which it was removed." 951 F. Supp. at 270.

The landowners contended that the February 3 letter violated the injunction both generally by asserting Clean Water Act jurisdiction over the proposed work in the first instance and specifically by making the following statement:

> As you may know, because of a recent Federal case [(<u>American Mining Congress I</u>)], the Corps has been directed to suspend enforcement of the [<u>Tulloch</u> Rule] until the issue is ultimately settled in the courts. However, until the Courts rule on the efficacy of the <u>Tulloch</u> Rule, we advise you to not perform any work which would be considered a discharge under the [<u>Tulloch</u> Rule].

The landowners asserted that these acts showed a conscious decision on the part of the Corps to disregard the <u>American Mining Congress I</u> injunction. The Corps clarified its position regarding the injunction in a subsequent letter (the March 13 letter):

> [O]ur February 3, 1997 letter states "…the Corps has been directed to suspend enforcement of the [<u>Tulloch</u> Rule] until the issue is ultimately settled in the courts." That remains our position. Our next statement "…we advise you to not perform any work which would be considered a discharge under the [<u>Tulloch</u> Rule]." is ambiguous and [we] will clarify it.
> Potential permit activities proposing activities involving only incidental fallback, will not be required to obtain individual permits.
> …
> Our past experience with the work performed at the Green Acres and Richter Farms is that it has involved bulldozer work where soil was redeposited from one place to another in waters of the United States by bulldozer blades, while trees, limbs, vegetation, root wads and brush were pushed into stockpiles, and land was leveled. These kinds of activities result in more than "incidental fallback".

Correspondence between the landowners and the Corps continued for eight months, with the landowners arguing that the Corps's assertion of jurisdiction

violated the <u>American Mining Congress I</u> injunction and the Corps maintaining that its actions fully comported with the injunction and, accordingly, that the proposed projects on both the Green Acres farm and the Richter farm—which the landowners detailed in another request for a 33 C.F.R. § 320.1(a)(6) ruling—were properly subject to the Clean Water Act. Finally, in November 1997, the landowners agreed to sell both properties to the Missouri Department of Conservation. The sale was consummated in April 1998.

In June 2002, the landowners filed suit against the government in the United States District Court for the Western District of Missouri, pursuant to the Federal Tort Claims Act (FTCA). Their complaint sought monetary relief on four counts: (1) trespass; (2) nuisance; (3) substantive due process violations; and (4) inverse condemnation. The government moved to dismiss the complaint for lack of subject matter jurisdiction, or, in the alternative, to dismiss for failure to state a claim or to grant summary judgment. The district court found that counts 1 and 2 failed the FTCA's private analogue requirement, <u>see</u> 28 U.S.C. § 1346(b)(1), and were further barred by the FTCA's discretionary function exception, <u>see</u> 28 U.S.C. § 2680(a). It therefore concluded that it did not have jurisdiction to hear those claims and granted the government's motion to dismiss.[6] <u>See also</u> Fed. R. Civ. P. 12(b)(1) (dismissal for lack of subject matter jurisdiction).

## II.

We review a district court's decision to dismiss a complaint for lack of subject matter jurisdiction *de novo*, placing the burden of proving the existence of subject matter jurisdiction on the plaintiff. <u>V S Ltd. Partnership v. Dept. of Housing and Urban Dev.</u>, 235 F.3d 1109, 1112 (8th Cir. 2000). Because jurisdiction is a threshold question, the court may look outside the pleadings in order to determine whether

---

[6]Counts 3 and 4 were voluntarily dismissed.

subject matter jurisdiction exists. Osborn v. United States, 918 F.2d 724, 728-30 (8th Cir. 1990).

The FTCA waives federal sovereign immunity and grants federal district courts jurisdiction over a certain category of claims against the United States only to the extent that a private person, under like circumstances, would be liable to the plaintiff under the substantive law of the state where the alleged wrongful conduct took place (in this case, Missouri). Washington v. Drug Enforcement Admin., 183 F.3d 868, 873 (8th Cir. 1999). Thus, to state a claim that is cognizable under the FTCA, a claim against the government must have a "private analogue"; in other words, the claim must be such that a similarly situated private party would be liable for the same conduct in Missouri. Id.; Howell v. United States, 932 F.2d 915, 917 (11th Cir. 1991).

The landowners contend that a private analogue to their claims against the government exists because, under Missouri law, the violation of an injunction supports claims for trespass and nuisance if all other elements of the claims are satisfied. Even assuming, *arguendo*, that this statement is true as a matter of law, the landowners' argument fails because the Corps did not violate the American Mining Congress I injunction.

The landowners assert that the injunction prevented the Corps from asserting jurisdiction over any excavation activities. As both the District of Columbia Circuit and the district court that issued the injunction later explained, however, the injunction prohibited the Corps only from regulating excavation that produced incidental fallback. See Nat'l Mining Ass'n v. United States Army Corps of Eng'rs, 145 F.3d 1399, 1403-05 (D.C. Cir. 1998); Am. Mining Cong. v. United States Army Corps of Eng'rs, 120 F. Supp. 2d 23, 28-29 (D.D.C. 2000) (American Mining Congress II). Even after the issuance of the injunction, the Corps was permitted to exercise jurisdiction over excavation activities that produced more than incidental

fallback.  See Nat'l Mining Ass'n, 145 F.3d at 1405; American Mining Congress II, 120 F. Supp. 2d at 28-29.

Our review of the correspondence between the landowners and the Corps indicates that, rather than asserting unqualified jurisdiction over all excavation activities, the Corps simply stated a single position: that it believed that the landowners' proposed projects were subject to the Clean Water Act because it believed that the projects would produce more than incidental fallback.  The March 13 letter stated this position explicitly, and the Corps's subsequent correspondence with the landowners repeatedly reaffirmed it.  Given the "considerable deference" shown by the District of Columbia Circuit toward the Corps's attempt (post-American Mining Congress I) to distinguish between incidental fallback and regulable redeposits, see Nat'l Mining Ass'n, 145 F.3d at 1405, we cannot say that the Corps's attempts to do so in this case violated the American Mining Congress I injunction.

The language contained in the February 3 letter does not alter our conclusion. Although the landowners construe the Corps's "advice" to them as an implicit threat to enforce the Tulloch Rule even after the imposition of the American Mining Congress I injunction, that language is tempered by the Corps's representation that it was doing so only because the validity of the Tulloch Rule had not been squarely settled by the courts.  In short, because the Corps could have filed either a motion for reconsideration in the district court or a notice of appeal to the District of Columbia Circuit—and in fact filed both—the statement in the February 3 letter warned the landowners that they might be subject to enforcement actions by the Corps in the event that the Tulloch Rule was upheld on reconsideration or on appeal.  At worst, the statement, when taken as a whole, is ambiguous (as the Corps acknowledged in its March 13 letter, which was in turn a response to a March 5, 1997, letter from the landowners' counsel challenging the Corps's assertion of jurisdiction over the landowners' proposed work), and is clarified when read in concert with the Corps's other correspondence with the landowners.

Because the Corps's assertion of probable jurisdiction did not violate the American Mining Congress I injunction, the landowners may satisfy the private analogue requirement only if they show that a private person under like circumstances, i.e., one who allegedly wrongfully determines that certain proposed excavation projects are subject to the Clean Water Act, would be liable for trespass and nuisance under Missouri law for engaging in such action. Because the Corps alone has the authority to enforce the Clean Water Act and to make permit decisions, see 33 C.F.R. §§ 320.2, 326.1-326.6, no private analogue exists for the relevant conduct in this case. Thus, the FTCA's waiver of sovereign immunity does not apply, and the district court is without subject matter jurisdiction to hear the case.[7]

The judgment is affirmed.

BEAM, Circuit Judge, dissenting.

I respectfully dissent from the judgment of the court. I would, instead, reverse the district court and remand this matter for a determination of liability and damages.

The appellants suffered substantial damage to their farmland as a result of the catastrophic flood of 1993 on the Missouri River and its tributaries. Officials of the United States Corps of Engineers (Corps) apparently saw this unfortunate occurrence as an opportunity to help the Missouri Department of Conservation (MDC) obtain title to appellants' farm property. MDC wanted this land because of its view that the property provided a strategic connection between two important state-owned wildlife refuges. Accordingly, the Corps appears to have instituted a plan to use (actually

---

[7]Because we hold that the landowners have not satisfied the private analogue requirement, we need not address the separate question of whether the discretionary function exception of the FTCA applies in this case. Klett v. Pim, 965 F.2d 587, 590 n.5 (8th Cir. 1992).

misuse) governmental power to render the land valueless for agricultural purposes, thus coercing a sale of the property to MDC.

The strategy commenced with the Corps' effort to interfere with appellants' attempt to fix levees damaged by the flood, remove sediment deposits and repair drains. After preliminary contacts by Corps' employees, which contacts carried with them the obvious inference of Corps' jurisdiction under the Clean Water Act (CWA), 33 U.S.C. § 1344(a), over at least some details of the restoration effort, the Corps sought and obtained a United States District Court injunction prohibiting appellants' work, some of which was underway. As noted by the court, we reversed this injunction order and assessed fees and costs against the Corps, noting the weakness of its legal position in the litigation. Judge Wollman's opinion in this earlier case highlights some of the inconsistent acts of the Corps. He said:

> Although the government has vigorously asserted, both in the court below and on appeal, that this is not a Clean Water Act case but is instead an action for breach of contract, the only irreparable harm the government has asserted is the landowners' alleged violation of the Clean Water Act, 33 U.S.C. § 1251 et seq. The government has, however, refused to address any of the landowners' arguments that their actions do not violate the Clean Water Act. The government cannot have it both ways.

United States v. Green Acres Enters., Inc., 86 F.3d 130, 133 (8th Cir. 1996). Losing on the contract litigation, the Corps undertook a bait and switch approach in which it attempted to assert both CWA jurisdiction and uncertainty about CWA jurisdiction, depending upon which approach seemed most expedient at the moment. In my view, these activities spawned a "federal tort claim," providing the appellants a valid cause of action in this case.

As outlined in more detail later, the Corps told appellants that they needed an excavation permit required under section 404 of the CWA. 33 U.S.C. § 1344(a). But, the Corps has no jurisdiction under the CWA unless the proposed activities would result in discharges into the "waters of the United States." 33 U.S.C. §§ 1311(a), 1362(7), 1362(12)(A). "If an activity takes place outside the waters of the United States, or if it does not involve a discharge [of prohibited pollutants], it does not need a section 404 permit, whether or not it is part of an established farming, silviculture or ranching operation." 33 C.F.R. § 323.4(a)(1)(ii). Waters of the United States include "wetlands." 33 C.F.R. § 328.3(a)(2). So, unless appellants' farmland was classified as "wetlands" under the Act, the Corps had no jurisdiction over the work proposed by appellants. Yet, even though authorized to determine jurisdiction under the CWA, 33 C.F.R. § 325.9, the Corps failed to make this determination at any time. Indeed, it refused to do so while at the same time threatening appellants with the imposition of onerous CWA remedies. This refusal likely stemmed from the Corps' belief that the long established farmable lands were not "wetlands" at all.

The Corps' brief in this appeal discloses that as late as September 15, 1997, well after the Tulloch Rule injunction violation, there had been no Natural Resources Conservation Service (NRCS) delineation of wetlands for appellants' property.[8] The record establishes repeated attempts by the appellants to have the Corps seek such a delineation and repeated refusals by the Corps to do so. Within this jurisdiction/no jurisdiction framework came the February 1997 letter at issue in this case.

Janie Cavitt, an attorney in the Office of Counsel of the Kansas City District of the Corps, speaking on behalf of the Acting District Engineer, Ronald Janak,

---

[8]Footnote 8 of the Corps' brief explains that "[a]s of January 1994, pursuant to an interagency Memorandum of Agreement, the delineation of wetlands (determination of whether land has the status of wetland) made by the [NRCS] on agricultural lands was to be used by the Corps and the EPA as the official delineation for the purpose of determining § 404 wetland jurisdiction."

(clearly inferring Corps' jurisdiction without any attempt to address the jurisdiction issue) sent the February 3, 1997, letter stating, in part:

> As you may know, because of a recent Federal case, the Corps has been directed to suspend enforcement of the excavation rule until the issue is ultimately settled in the courts. However, until the Courts rule on the efficacy of the Tulloch[9] Rule, we advise you to not perform any work which would be considered a discharge under the excavation rule.

Yet, at this point, the district court of the District of Columbia had indeed ruled on "efficacy of the Tulloch Rule," enjoining its implementation. The injunction was in full force and effect and fully binding on the Corps at all times relevant to the Corps' actions at issue in this case. Without withdrawing its obvious violation of the injunction, the Corps, in a follow-up letter dated April 28, 1997, expanded its warning, speculating on the potential for additional CWA violations. All of this occurred, as earlier indicated, without any determination by the Corps that appellants' property was within the CWA jurisdiction of the Corps.

---

[9]In 1986, the Corps issued a regulation purporting to implement its section 404 CWA congressional authorization. In 1993, the Corps, in response to litigation instituted by environmental groups, revised the regulation, greatly expanding its claimed jurisdictional authority. The revised regulation became known as the Tulloch Rule. Nat'l Mining Ass'n v. United States Corps of Eng'rs, 145 F.3d 1399, 1401-02 (D.C. Cir. 1998). The Tulloch Rule was then challenged in American Mining Congress v. United States Army Corps of Engineers, 951 F. Supp. 267 (D.D.C. 1997). This litigation resulted in a nationwide injunction entered by the District Court of the District of Columbia on January 23, 1997, prohibiting implementation of the regulation. Although stayed for a period of time beginning on June 25, 1997, the injunction was in full force and effect during all times relevant to this action and was ultimately affirmed by the United States Court of Appeals for the District of Columbia Circuit in 1998. National Mining Ass'n, 145 F.3d at 1410.

Applying such tactics the Corps was again trying to have it "both ways." That is, it acted like it had section 404 CWA wetland jurisdiction while at the same time insisting that it had no obligation to seek the NRCS determination. This approach was likely dictated, as earlier noted, by the Corps' recognition that the appellants' farmland was very likely not CWA wetlands.

Whether or not the Corps had authority to interfere with the appellants' property rights, it did so. In the process, it violated the <u>Tulloch</u> Rule injunction to the clear detriment of appellants. In Missouri, evidence of the violation of an injunction with full knowledge of its terms provides the basis for recovery of damages in tort. <u>Coleman v. Espy</u>, 986 F.2d 1184, 1192 (8th Cir. 1993) (holding that violation of a viable injunction establishes a tort action remediable through the Federal Tort Claims Act); <u>State ex inf. Ashcroft v. Kansas City Firefighters Local No. 42</u>, 672 S.W.2d 99, 109-16 (Mo. Ct. App. 1984) (holding that union's act in defiance of court injunction with knowledge of its contents provides basis for a tort recovery for damages); <u>Coonis v. Rogers</u>, 429 S.W.2d 709, 713 (Mo. 1968) (holding that violation of court injunction by interfering with contract right with full knowledge of situation provides tort claim supporting recovery for damages). This precedent establishes the private analogue requirement of the FTCA.

I further note that the discretionary function defense in the FTCA does not shield the Corps. Under the facts presented in this action, no properly assertable element of judgment or choice was available to the Corps when it decided to violate the injunction.

I would reverse and remand for trial.

_____

-13-